**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **THE BOARD OF EDUCATION OF THE CITY OF CHICAGO,** | |
| *Plaintiff,* | |
| **v.** | **Civil Action No. 1:18-cv-7914** |
| **BETSY DEVOS, in her capacity as Secretary of the United States Department of Education, and the UNITED STATES DEPARTMENT OF EDUCATION,** | |
| *Defendants.* | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff, the Board of Education of the City of Chicago ("CPS"), by its attorneys Riley Safer Holmes & Cancila LLP and Franczek Radelet P.C., states as follows for its complaint:

### INTRODUCTION

1.　　On September 27, 2018, the United States Department of Education (the "Department") summarily, without prior notice or hearing and without providing any factual basis for its decision, revoked from CPS $4 million dollars in Magnet Schools Assistance Program ("MSAP") grant funds earmarked for the 2018 fiscal year ("FY"). The MSAP grant funds were designated to fund three cutting-edge science, technology, engineering, and math ("STEM") magnet schools that educate predominately poor Hispanic and African-American students.

2.　　In revoking the $4 million MSAP grant funds, the Department referenced investigations into "complaints" filed with the Department's Office for Civil Rights ("OCR") to support its assertion that CPS would not meet required grant assurances related to discrimination

1

in the design and operation of extracurricular activities. However, the Department did not identify which specific complaints gave rise to OCR's determination. Moreover, the Department acknowledged that the complaints are still under investigation and that the Department has made "no findings" regarding the complaints.

3.     The Department denied CPS the right to dispute the Department's decision before revoking CPS's FY 2018 MSAP grants. Under the applicable statutes and regulations, CPS was entitled to notice of the factual and legal basis for the Department's decision and an opportunity for a hearing before the Department withheld the FY 2018 MSAP grant.

4.     On October 4, 2018, CPS requested both a hearing and the basis for the Department's decision. The Department ignored that request and indicated its intent to distribute the $4 million originally allocated to CPS to other jurisdictions. To date, despite repeated efforts by CPS, the Department has failed to provide any explanation as to the basis for its decision.

5.     The unlawful actions of the Department mark a radical departure from the Department's past practices. CPS is unaware of any instance in the history of the MSAP program where the Department withdrew a continuation of MSAP grant funds based on open OCR complaints. Indeed, the Department terminated CPS's funds in this case despite that fact that school districts across the country that have received MSAP grants face similar open OCR investigations and have not lost federal funding.

6.     CPS brings this action seeking a declaration that the Department's termination of the FY 2018 MSAP grant funds, without complying with the procedural requirements and without a valid substantive basis, was without observance of procedure required by law, arbitrary and capricious, and without statutory authority, all in violation of the Administrative Procedure Act

(the "APA"). CPS further seeks an order setting aside the Department's unlawful termination of the grant funds, as well as other injunctive and declaratory relief.

## PARTIES

7. The Board is responsible for the governance, organization, and financial oversight of Chicago's public school district (the "District"), which is the nation's third largest school district and serves over 381,000 pre-kindergarten through twelfth grade students in 664 schools in Chicago, Illinois.

8. The Department is the agency of the federal government that establishes policy for, administers, and coordinates most federal assistance to education. Among other responsibilities, the Department administers the MSAP through its Office of Innovation and Improvement ("OII") and enforces Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, through OCR.

9. Betsy DeVos is the Secretary of the Department of Education. Secretary DeVos is named as a defendant in her official capacity.

## JURISDICTION

10. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 1346. The Court is authorized to issue the relief sought here under the Administrative Procedure Act, 5 U.S.C. §§ 702, 705, 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

11. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and pursuant to 28 U.S.C. § 1391(e)(1)(C) because the Plaintiff is situated in this district and the action involves no real property. Venue is also appropriate pursuant to 5 U.S.C. § 703 because there is no "special statutory review proceeding relevant to the subject matter in a court specified by statute."

## FACTUAL BASIS FOR PLAINTIFF'S CLAIMS

The District and Its Magnet School Efforts

12.     Chicago is a city with great diversity, with a population that is 32% white, 32% African American, 29% Latino, 6% Asian, and 0.1% American Indian, according to 2014 census data.  The District is also racially diverse, with current student enrollment that is 47% Latino, 38% African American, 10% white, 4% Asian, 0.2% Native American/Alaskan, and 1% multi-racial.  Additionally, 76.6% of CPS students are "economically disadvantaged," meaning that they come from families whose income is close to the federal poverty line.

13.     Despite the diversity of the city and the District, Chicago's residential and employment patterns remain heavily segregated.  Many students live in mono-ethnic and socio-economic neighborhoods and attend CPS schools with similar demographics.

14.     CPS's development and expansion of magnet schools within the District has been a powerful tool in combatting racial and socio-economic segregation in the District.

15.     Magnet schools are public elementary or secondary schools that offer a distinctive curriculum or instructional approach, attract students from outside assigned neighborhood attendance zones, and include diversity as a stated purpose.  "Magnet" refers to the fact that students attending the school come from across normal attendance boundaries.  The theory behind magnet schools is that by drawing from different neighborhoods, the schools will attract students with varied backgrounds, thereby creating diverse and engaging learning communities.  Magnet schools first developed in the 1970s as a voluntary desegregation tool and an alternative to forced busing.  After a Federal court officially endorsed magnet schools as a viable desegregation method in the 1970s, the number of magnet schools nearly doubled in the 1980s.  They remain popular today.

4

<u>The MSAP Grant</u>

16.     The MSAP is a federal grant program authorized by statute and administered by OII within the Department.  *See* 20 U.S.C. §§ 7231-7231j.  The MSAP program provides grants to eligible local educational agencies ("LEAs") to establish and operate magnet schools.  *See id.* The grants assist in the desegregation of public schools by supporting the elimination, reduction, and prevention of minority group isolation in elementary and secondary schools with substantial numbers of minority group students.  20 U.S.C. § 7231(b)(1); 34 C.F.R. § 280.1(a).

17.     The MSAP authorizes the Department to award grants to eligible LEAs to carry out the purpose of the MSAP program for magnet schools that are either part of an approved desegregation plan, or designed to bring students from different social, ethnic, and racial backgrounds together.  *See* 20 U.S.C. § 7231b.

18.     As part of the application process for an MSAP grant, an eligible LEA must provide the Department assurances that it will not engage in discrimination based on race, religion, color, national origin, sex, or disability in designing or operating extracurricular activities for students. 20 U.S.C. § 7231d(b)(2)(C)(iii).

19.     The authorizing statute for the MSAP states the following: "No grant shall be awarded under this part unless the Assistant Secretary of Education for Civil Rights determines that the assurances described in subsection (b)(2)(C) will be met." 20 U.S.C. § 7231d(c).

20.     The "Assistant Secretary of Education for Civil Rights" ("Assistant Secretary") is the head of OCR in the Department. OCR enforces several Federal civil rights laws that prohibit discrimination based on race, color, national origin, sex, disability, and age in programs or activities that receive Federal funds from the Department, including Title IX.  *See* 20 U.S.C. § 1681; 34 C.F.R. § 106.71; 34 C.F.R. § 100.7.

21.     Under Title IX and its implementing regulations, no person may be discriminated against based on sex in any education program or activity receiving Federal financial assistance (FFA), with certain exceptions.  20 U.S.C. § 1681(a); 34 C.F.R. § 100.3.  For purposes of Title IX, an educational institution includes any public or private preschool, elementary, or secondary school.  20 U.S.C. § 1681(a).

Legal Requirements for Withholding or Terminating MSAP Continuation Funds

22.     Several statutes and regulations govern the Department's decision to withhold or terminate MSAP grant funds.

23.     The MSAP regulations state that the grants are governed by Title 2 of the Code of Federal Regulations.  *See* 34 C.F.R. § 280.3.  Those regulations allow a Federal awarding agency to "wholly or partially terminate [a] Federal award" if it determines that additional conditions will not remedy non-compliance by the recipient with Federal statutes, regulations, or the terms and conditions of a Federal award.  2 C.F.R. § 200.338; *see also* 2 C.F.R. § 200.339(a)(1).  Prior to termination of a Federal Award, the Department must provide the non-federal entity with a notice, as well as an opportunity to object to and provide information and documentation challenging the suspension or termination action.  2 C.F.R. §§ 200.340–41.  That process must be in accordance with written processes and procedures published by the Department and in compliance with any requirements for hearings, appeals, or other administrative proceedings to which the non-federal entity is entitled under the statutes and regulations applicable to the action involved.  *Id.* at § 200.341.

24.     The General Education Provisions Act ("the GEPA"), which applies to the MSAP, also includes specific notification and pre-decisional hearing requirements.  *See* 20 U.S.C. § 1234d(b).  Under the GEPA, before withholding payments under a federal program, the Secretary

6

must notify the recipient in writing of (1) the intent to withhold payments; (2) the factual and legal basis for the decision that the recipient failed to meet its requirements, and (3) "an opportunity for a hearing to be held on a date at least 30 days after the notification has been sent to the recipient." *Id.* The hearing must be held before an administrative law judge, and the recipient is entitled to judicial review of that judge's decision. *Id.* at § 1234g. The Secretary may not take any action on the basis of a final agency action until judicial review is completed. *Id.*

25. The regulations governing OCR provide that no order suspending, terminating or refusing to grant or continue FFA shall become effective until: (1) the responsible Department official has advised the recipient of federal funds of its failure to comply and has determined that compliance cannot be secured by voluntary means; (2) there has been an express finding on the record, after opportunity for hearing, of a failure by the recipient to comply with an applicable legal requirement; (3) the expiration of 30 days after the Secretary has filed with the committee of the House and the committee of the Senate having legislative jurisdiction over the program involved, a full written report of the circumstances and the grounds for such action. 34 C.F.R. § 100.8(c). As used in this regulation, the term "responsible Department official" means the Secretary of Education or any person to whom the Secretary has delegated authority. *See id.* at § 100.13(c).

<u>CPS Applies for and Receives MSAP Grant</u>

26. CPS applied for an MSAP grant in 2017. CPS sought the grant to transform three existing elementary schools—William H. Brown Elementary School, Claremont Academy Elementary School, and Joseph Jungman Elementary School—into high-quality STEM magnet schools.

27.    The Department selected CPS for an MSAP grant on or around September 27, 2017.  The Department then disbursed partial funding to CPS for its MSAP grant for the first budget period of the grant (FY 2017).

28.    CPS used the FY 2017 grant funds to develop STEM programs at the three magnet schools.  Each school added new equipment and science-based technology, opened two new teacher coaching positions, and added hourly pay for professional development on STEM programs.  CPS developed a budget for the future operation of the STEM programs at the schools, and planned to continue its implementation as of September 2018.

The Department's 2017 Evaluation of OCR Complaints at CPS

29.    In selecting CPS for an MSAP grant, the Department found that CPS would comply with all assurances required for the grant, including those assuring non-discrimination based on sex in the design and operation of extracurricular programs, during the pendency of the grant and the FY 2017 budget period.  *See* 20 U.S.C. §§ 7231d(c), 7231d(b)(2)(c).

30.    The Department determined that CPS would comply with its non-discrimination assurances despite the fact that OCR was investigating (and continues to investigate) two complaints—one opened for investigation on July 27, 2015, and the second on January 30, 2017—which alleged that the District failed to adequately respond to complaints of sexual harassment and assault in its schools.

31.    In the letters notifying CPS of the investigations, OCR noted that the complaints raised the question of whether the District properly responds to complaints of sexual violence in its schools.  The notification letters further stated that "opening the allegation for investigation in no way implies that OCR has made a determination with regard to its merits."

32.     For the past several years, CPS and the local office of OCR have worked diligently and cooperatively in the investigation of these complaints.

33.     Neither of the complaints alleged discrimination in the design or operation of extracurricular activities.

### 2018 *Chicago Tribune* Reports and CPS's Proactive Response

34.     On June 1, 2018, the *Chicago Tribune* published findings from an investigation into the District's handling of reports of sexual abuse and sexual assault of District students. The *Tribune* published additional articles regarding allegations of sexual misconduct at CPS schools on July 26 and 27, 2018.

35.     In response to the *Tribune* report and the complaints filed by OCR, CPS has implemented comprehensive reforms to ensure that all complaints of sexual harassment and/or assault are promptly investigated and remedied.  Among other steps, CPS:

> (a) retained an independent outside investigator to review all of CPS's practices, policies, and procedures for addressing instances of alleged sexual misconduct, including harassment and assault;

> (b) re-trained all employees during the current school year on their legal responsibilities to report abuse and neglect of students;

> (c) has conducted over 40,000 fingerprint-based background checks of local School Council members and school employees, vendors, and volunteers during the summer of 2018, and prohibited all persons from working in a CPS school for the 2018–2019 school year until he or she cleared such a check;

> (d) launched the Office of Student Protections and Title IX ("OSP"), a first of its kind office in any K-12 district, which is responsible for managing the District's

response to all incidents of sexual misconduct, including sexual abuse, sexual

harassment, and sexual bullying involving CPS students;

(e) budgeted approximately $3 million to support a 20-member team with a

mandate to advocate for students;

(f) worked closely with OCR to develop categories of data that OSP now collects

for every incident reported to OSP; and

(g) committed that OSP would refer all allegations of adult-on-student abuse to the

CPS Office of the Inspector General for investigation, while directly overseeing

investigations into allegations of student-on-student abuse, and providing

immediate and ongoing supports to all student affected by sexual misconduct.

36.     CPS has communicated these steps to OCR and received positive feedback from

OCR regarding CPS's changes.

### OII Terminates CPS's FY 2018 MSAP Funds

37.     On September 27, 2018, the Department notified CPS that OII had reviewed CPS's

plan for continuation MSAP funding for the second (FY 2018) budget period.  (*See* letter dated

September 27, 2018 (the "OII Letter"), attached hereto and incorporated by reference as Exhibit

A.)

38.     OII stated in the OII Letter that it was unable to award FY 2018 continuation grant

funds to CPS based on the requirements of 34 C.F.R. § 75.253.  OII said its decision not to award

FY 2018 MSAP funds to CPS "is due to the decision of OCR's Assistant Secretary—as required

by 20 U.S.C. § 7231d(c)—that each grantee will meet its civil rights assurances set forth in 20

U.S.C. § 7231d(b)(2)(C)(iii) to not discriminate on the basis of race, religion, color, national origin,

sex, or disability, *inter alia*, 'in designing or operating extracurricular activities for students.'  For

FY 2018, OCR's Assistant Secretary is unable to certify that CPS'[s] MSAP civil rights assurances 'will be met.'" (*Id*.)

39.     In the OII Letter, OII cites "[c]ivil rights complaints filed with OCR" that "allege that CPS failed to provide a prompt and equitable response to reports of sexual violence of which it had notice, in violation of [Title IX]." OII claimed that those "complaints and the facts gathered so far in OCR's ongoing investigation include potential district-wide violations in extracurricular programs that affect all CPS schools—including the MSAP project's magnet and feeder schools— in addition to the allegations raised in the complaints at specific schools." OII did not identify which specific "complaints" formed the basis for its decision.

40.     The OII Letter acknowledged that OCR had made "no findings" in the OCR investigations at issue. Without providing any details, the OII Letter stated that "facts already known to OCR's Assistant Secretary based on OCR's ongoing sexual violence investigations support the OCR Assistant Secretary's conclusion that CPS'[s] statutory non-discrimination assurance obligations prohibiting sex discrimination in the operation of extracurricular activities for students will not be met []."

41.     OII's decision to withhold FY 2018 continuation funds was made without any prior notice to CPS of any alleged concern that CPS would not comply with its FY 2018 assurances, and without providing CPS any pre-decisional opportunity to respond to any such concerns.

42.     The Department has refused to provide CPS with any specific information about the factual basis for its decision, despite CPS's repeated requests.

43.     The OII Letter was signed by Jason Botel, who at the time was the Acting Assistant Deputy Secretary of the Office of Innovation and Improvement. Mr. Botel announced his

resignation from the Department on the same day that the OII Letter was delivered, and left the Department in mid-October. The current Acting Assistant Deputy Secretary of OII is James Blew.

CPS Requests a Hearing, and the Department Ignores the Request

44. On October 4, 2018, CPS responded to the OII Letter. (*See* letter dated October 4, 2018, attached hereto and incorporated by reference as Exhibit B.) CPS notified OII's new Executive Director that OII's decision to withhold FY 2018 grant funds was made without prior notice to CPS and without any opportunity for a pre-decisional hearing.

45. CPS further noted that OII made its decision despite CPS's demonstration to local OCR representatives that CPS will comply with its obligations under Title IX in the 2018–2019 school year.

46. CPS requested that OII provide the factual and legal basis for the conclusion that CPS "will not" comply substantially with Title IX in the future.

47. CPS also requested an opportunity to defend itself at a hearing and to detail the unprecedented steps the District has taken to better safeguard students and ensure their rights are protected. CPS requested that OII provide it the required notice and a hearing before terminating the FY 2018 funds.

48. On November 2, 2018, OII sent CPS a letter following up on the original OII Letter. (*See* letter dated November 2, 2018, attached hereto and incorporated by reference as Exhibit C.) OII ignored CPS's request for a hearing. OII also ignored CPS's request for the factual or legal basis of OII's funding decision. OII instead quoted Title IX and requested that CPS take certain steps "[a]s you work toward obtaining [OCR's] certification that you will meet your civil rights assurances … ."

CPS's Efforts to Uncover the Basis for the Department's Funding Decision

49.     Despite the Department's refusal to provide CPS with the requisite information to support the OCR and OII funding decisions, CPS has sought to obtain information about the Department's actions from other sources.

50.     On October 16, 2018, CPS's congressional delegation wrote to Secretary DeVos to request clarification from OII regarding its decision to withhold CPS's FY 2018 MSAP funds. The letter stated that it seems "highly irregular that the Department would withhold federal funds on the basis of an investigation that has yet to be concluded and for which, to date, 'there have been no findings.'"

51.     In an email response to the requests for information from CPS's congressional delegation, the Department acknowledged:

a.  **OCR had no written communication with CPS about the MSAP performance period extension** other that the September 27, 2018 OII letter which communicated the decision to withhold the FY 2018 grant.

b.  **The Department has never terminated continuation funds for the MSAP based on open OCR complaints for which no findings had been made.**  There are only two cases in MSAP's history in which the OCR Assistant Secretary was unable to certify an LEA's civil rights compliance: Berkeley Unified School District in 2004 and Duval County School District in 2013. Neither case involved a continuation grant, the decisions by OCR's Assistant Secretary in the other two cases were not related to pending investigations with OCR, and the decisions in both cases were based on the school district's refusal to suspend facially discriminatory policies and procedures that were directly contrary to the goals of the MSAP program.

13

    c. **The Department can point to no legal authority allowing it to terminate MSAP funds in the manner in which it has terminated CPS's funds.** In its response to the congressional delegation, OCR stated that it is "appropriate for the Assistant Secretary to consider known potential civil rights violations that are part of an ongoing administrative investigation, where additional violations may be discovered, and where compliance has not yet been effected through a resolution agreement, as neither the MSAP statute, nor other applicable laws relating to OCR, prohibits such consideration." The Department did not, and cannot, identify any statute that allows it to terminate the funds in question without notice and a hearing, and ignored clearly applicable statutory and regulatory mandates that it provide such notice and hearing to CPS before terminating funds.

    d. **The Department reallocated CPS's FY 2018 funds to other grantees.** The communication stated that the Department reallocated the funds that were not provided to CPS in September to the remaining 31 MSAP grantees that received year 2 continuation funding.

52. Additionally, in an article dated September 28, 2018, the *Chicago Tribune* referenced a September 24, 2018, memorandum purportedly detailing OCR's concerns with CPS's assurances. The *Tribune* stated that federal officials had provided a copy of that memorandum to the newspaper.

53. CPS asked the Department on multiple occasions for a copy of the September 24 memorandum, including in CPS's October 4, 2018 letter.

54. Finally, on November 2, OII provided to CPS a heavily redacted version of the memorandum. (*See* September 24 memorandum, attached hereto and incorporated by reference

14

as Exhibit D.)  The unredacted segments of that memorandum do not indicate the legal and factual basis for the Department's actions.

<u>Effect of the Withdrawal of FY 2018 Grant Funds</u>

55.     The Department's failure to provide CPS with the $4 million MSAP funding due to CPS for FY 2018 has directly injured CPS.

56.     Each of the three schools that received FY 2017 MSAP grant funding made significant developments to their STEM-based education programs in the first year of the grant. These programs have had a direct and positive impact on the students in these schools.

57.     As a result of the Department's unlawful decision to withhold FY 2018 MSAP grant funds, the STEM programs at each of these schools will suffer.  In fact, CPS students have already been directly impacted by the Department's revocation of the MSAP funds.  Due to the loss of funding, student field trips, enrichment, and extra-curricular programming has been significantly reduced.

58.     In addition, because of the loss of CPS's MSAP funds, CPS is no longer able to provide funding for teacher professional development at the three recipient schools.  The grant suspension has also negatively impacted CPS's marketing efforts, which has hampered CPS's ability to recruit a diverse pool of student applicants to its magnet schools.

59.     CPS has made significant efforts in an attempt to continue the STEM programs at the three magnet schools.  CPS drafted a contingency budget, and as part of that budget, CPS will reallocate funding intended for other CPS programs and transfer those funds to the magnet school programs.  The total expenditure in the contingency budget will fall far short of the over $4 million originally granted to CPS by the Department for FY 2018.

<u>The Department's Unlawful Decision Violated Governing Statutes and Regulations</u>

60.    The Department's decision to terminate CPS's FY 2018 MSAP funds without notice and an opportunity to respond, and without a valid substantive basis to find prospective concern with CPS's compliance with Title IX, flouts the requirements of relevant law.

61.    In its email response to the October 16, 2018, letter from CPS's congressional delegation, the Department cited Title 2 of the Code of Federal Regulations as the purported authority for OII's determination.

62.    OII failed to comply with the requirements of 2 C.F.R. Part 200 governing the whole or partial termination of a Federal award for non-compliance.  Specifically, the Department terminated CPS's fiscal year 2018 award without a determination that any alleged non-compliance cannot be remedied by imposing additional conditions, as required by 2 C.F.R. § 280.338. Moreover, the Part 200 regulations required the Department to provide CPS notice and an opportunity to object to and provide information and documentation challenging the termination action.  2 C.F.R. §§ 300.340–41.

63.    The Department also failed to comply with GEPA, which provides that before withholding payments, the Department must notify the recipient in writing of the intent to withhold payments, the factual and legal basis for the Department's belief that the recipient has failed to comply substantially with a requirement of law, and an opportunity for a hearing to be held on a date at least 30 days after the notification has been sent to the recipient.  20 U.S.C. § 1234d(b). the Department may not take any action on the basis of a final agency action until judicial review of that decision is completed.  20 U.S.C. § 1234g.  The Department failed to provide CPS an opportunity for a hearing, and as the Department acknowledged in its communications with CPS's

16

Congressional delegation, the Department had no communication with CPS regarding any alleged noncompliance with the MSAP assurances prior to OII's termination of the award for FY 2018.

64.     Finally, the Department ignored the requirement in the OCR regulations to make "an express finding on the record, after opportunity for hearing, of a failure by the applicant or recipient to comply with a requirement," as required by the regulations. 34 C.F.R. § 100.8(c).

65.     CPS has exhausted any remedies that it may have had at the administrative level. The Department provided no notice for its decision, thereby denying CPS's ability to offer facts prior to the Department's final determination relating to the FY 2018 MSAP grant funding.  The Department ignored CPS's request for an opportunity to appeal the Department's decision at a hearing, ignored CPS's request for the factual and legal basis for the Department's decision, and reallocated funds awarded to CPS to other jurisdictions.  CPS is left with no alternative but to challenge the Department's decision in federal court.

## CAUSES OF ACTION

### COUNT I
**(Violation of the Administrative Procedure Act through Agency Action Without Observance of Procedure Required by Law (MSAP, GEPA, 2 C.F.R. § 200))**

66.     CPS incorporates by reference the allegations in the preceding paragraphs.

67.     Section 706 of the APA requires a reviewing court to hold unlawful and set aside an agency action found to be "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

68.     The Department's decision to withhold FY 2018 MSAP grant funding from CPS constituted a final agency decision.  CPS has no other adequate remedy in a court.

69.     The Department's decision to withhold FY 2018 MSAP grant funding from CPS was governed by the MSAP statute and its implementing regulations (20 U.S.C. §§ 7231-7231j;

34 C.F.R. § 280.1-280.41), GEPA and the Education Department General Administrative Regulations (20 U.S.C. § 1234 *et seq.*; 34 C.F.R. § 75 *et seq.*), the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards in (2 C.F.R. § 200 *et seq.*), and the statutes and regulations governing OCR (20 U.S.C. § 1682; 42 U.S.C. § 2000d-1; 34 C.F.R. § 100.1 *et seq.*).

70.     Prior to withholding FY 2018 grants from CPS, the Department was required to provide the notice of the factual and legal basis for its findings, and to provide CPS with the opportunity to challenge those findings at a hearing before an administrative law judge. 20 U.S.C. § 1234d(b); 2 C.F.R. §§ 200.340-341; 34 C.F.R. § 100.8(c). A decision by such an administrative law judge would have been subject to judicial review, and the Department would have been forbidden from taking any action based on the decision until the completion of the judicial review. 20 U.S.C. §§ 1234g(a), (b).

71.     The Department terminated CPS's FY 2018 MSAP funding without following these statutory and regulatory requirements.

72.     The Department failed to provide CPS with pre-decisional notice of its findings, and ignored CPS's request for the factual and legal basis for the Department's decision and for an opportunity for a hearing.

73.     The Department reallocated CPS's FY 2018 MSAP grant funds without affording CPS any process to challenge the basis for the Department's decision.

74.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, CPS is entitled to a declaration that the Department's termination of CPS's FY 2018 MSAP funding was without observance of the procedures required by law and an order that the Department's decision be set aside.

**COUNT II**
**(Violation of the Administrative Procedure Act through**
**Agency Action Without Observance of Procedure Required by Law (Title IX))**

75.     CPS incorporates by reference the allegations in the preceding paragraphs.

76.     Section 706 of the APA requires a reviewing court to set aside an agency action found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

77.     The Department's decision to withhold FY 2018 MSAP grant funding from CPS constituted a final agency decision. CPS has no other adequate remedy in a court.

78.     Title IX sets forth detailed procedural requirements that OCR must follow before it revokes federal funding from a recipient due to noncompliance with non-discrimination requirements on the basis of sex.

79.     Specifically, 20 U.S.C § 1682 provides that compliance with any requirement adopted pursuant to Title IX may be enforced "by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement. . . . " 20 U.S.C. § 1682 (emphasis added).

80.     Further, "no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined compliance cannot be secured by voluntary means." *Id*.

81.     If OCR terminates or refuses to continue a grant because of a finding that an educational institution discriminated on the basis of sex, OCR must "file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report." *Id*.

82. The Department terminated CPS's FY 2018 MSAP funding without following these statutory and regulatory requirements.

83. As the Department admitted, there has been no express finding on the record of applicable violation by CPS. The Department also failed to provide an opportunity for a hearing provided to CPS prior to any such finding.

84. The Department did not advise CPS of its failure to comply, or make a determination that compliance could not be secured by voluntary means, prior to revoking the funding. The Department did not acknowledge or even consider the voluntary initiatives that CPS has recently undertaken to protect students from sexual assault and misconduct, and it has offered no explanation as to how the steps taken by CPS were inadequate to assure voluntary compliance during the grant period.

85. The Department revoked the $4 million in funding from CPS without filing the requisite report with Congress, or waiting the required 30-day period after filing the report.

86. Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, CPS is entitled to a declaration that the Department's termination of CPS's FY 2018 MSAP funding was without observance of the procedures required by law and an order that the Department's decision be set aside.

## COUNT III
### (Violation of the Administrative Procedure Act through Arbitrary and Capricious Agency Action)

87. CPS incorporates by reference the allegations in the preceding paragraphs.

88. Section 706 of the APA requires a reviewing court to set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

89.     The Department's decision to withhold FY 2018 MSAP grant funding from CPS constituted a final agency decision. CPS has no other adequate remedy in a court.

90.     An agency must articulate a rational connection between facts found and the choices it makes. As the Supreme Court has repeatedly explained, "[i]t will not do for a court [or for the parties affected by an agency decision] to be compelled to guess at the theory underlying the agency's action[.]" *Sec.& Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995 (1947); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513, 129 S. Ct. 1800, 1810, 173 L.Ed.2d 738 (2009) ("[W]e insist that an agency ... articulate a satisfactory explanation for its action." (internal quotation marks and citation omitted)); *Commc'ns & Control, Inc. v. F.C.C.*, 374 F.3d 1329, 1335–36 (D.C. Cir 2004) (holding that a conclusion accompanied by "*no* explanation" is the epitome of "arbitrary and capricious" decision-making (emphasis in original)).

91.     OII has failed to articulate a rational and lawful explanation for its action of terminating CPS's FY 2018 MSAP funding. The September 27 OII Letter states that it based its decision not on "findings" but on "facts already known to OCR's Assistant Secretary." (Ex. A.) The Department has refused to specify what those "facts" are, and rebuffed CPS's request that the Department provide the facts and legal authority supporting its decision.

92.     The Department's decision cannot be based solely on the fact of an ongoing OCR investigation for which no factual findings have been made. The Department has not revoked MSAP grant funding from other school districts across the country that are subject to ongoing OCR investigations. Nor can the decision be based on past noncompliance with nondiscrimination obligations, rather than a consideration of CPS's ability to comply with the law during the grant

period.  Without an adequate explanation as to why the Department revoked the FY 2018 MSAP

funds, CPS is left to speculate as to the basis of the Department's decision.

93.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, CPS is entitled to a declaration

that the Department's termination of CPS's FY 2018 MSAP funding was arbitrary and capricious

and an order that the Department's decision be set aside.

## COUNT IV
### (Violation of the Administrative Procedure Act through
### *Ultra Vires* Conduct Not Authorized by Congress in the Underlying Statute)

94.     CPS incorporates by reference the allegations in the preceding paragraphs.

95.     The APA requires courts to hold unlawful and set aside any agency action that is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in

excess of statutory jurisdictions, authority, or limitations[.]"  5 U.S.C. § 706(2)(A), (C).

96.     The Department's decision to withhold FY 2018 MSAP grant funding from CPS

constituted a final agency decision.  CPS has no other adequate remedy in a court.

97.     The Department of Education may only exercise authority conferred by statute.  *See*

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297, 133 S. Ct. 1863, 1869, 185 L. Ed. 2d 941

(2013).

98.     The MSAP statute does not require a general assurance that the applicant will

comply with civil rights laws, including Title IX.  Rather, the MSAP statute states only that each

grant application provide assurances that the applicant will not "engage in discrimination based on

race, religion, color, national origin, sex, or disability" in: (i) the hiring, promotion, or assignment

of employees or personnel; (ii) the assignment of students to schools or to courses within the

school, other than to carry out the approved plan; and (iii) the design and operation of

extracurricular activities for students.  20 U.S.C. § 7231d(b)(2)(C)(i–iii).

99.     Title IX provides that OCR can take no action to effect compliance until OCR "has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." 20 U.S.C. § 1682. Title IX's regulations require that OCR's right to enforce a finding of noncompliance by the suspension or terminating of grant funds can only occur after OCR attempts resolution through informal means and, if such efforts are unsuccessful, not until (1) the responsible Department official has advised the recipient of its failure to comply and has determined that compliance cannot be secured by voluntary means; (2) there has been an express finding on the record, after opportunity for hearing, of a failure by the applicant or recipient to comply with an applicable legal requirement; (3) the expiration of 30 days after the Secretary has filed with the committee of the House and the committee of the Senate having legislative jurisdiction over the program involved, a full written report of the circumstances and the grounds for such action. *Id.*; 34 C.F.R. § 100.8(c).

100.    According to the September 27, 2018, OII Letter, OII's decision to withhold the FY 2018 MSAP funds was based on OCR's inability to certify that CPS's MSAP civil rights assurances "will be met" with respect to the design and operation of extracurricular activities for students. (Ex. A.); *see also* 20 U.S.C. § 7231d(b)(2)(C)(iii). According to the OII Letter, however, "there have been no findings" by OCR that CPS has failed to or will fail to meet its statutory nondiscrimination obligations with respect to sex. (Ex. A.)

101.    OCR's determination that CPS will not meet its MSAP assurances for the 2018–2019 school year is invalid under the statute to the extent that OCR's decision was based only on allegations made in complaints that are currently under investigation by OCR and for which there have been "no findings."

102.    Not only has OCR not made any "findings" with respect to CPS, there has been no effort to resolve the allegations through informal means, nor has the Department complied with the notice, hearing, decision, and judicial review requirements relating to any enforcement action based on a finding of noncompliance with Title IX that are provided for in the applicable regulations. *See* 34 C.F.R. §§ 100.9–11 and Part 101. Thus, the Department lacked authority to determine that CPS will not meet its MSAP assurances because it failed to provide for the informal resolution provided for by statute, or to offer appropriate process for any alleged noncompliance.

103.    OCR's determination that CPS will not meet its MSAP assurances for the 2018-2019 school year is also invalid under the statute because, to the extent OCR based its decision on the 2015 and 2017 complaints, OCR's decision was based on complaints of past conduct which may or may not give rise to a finding of past non-compliance with Title IX and because OCR therefore has not made a determination that CPS's statutory non-discrimination obligations set forth in 20 U.S.C. § 7231d(b)(2)(C)(iii) "will not be met" during fiscal year 2018.

104.    The determination that CPS will not meet its MSAP assurances for the 2018–2019 school year is also invalid under the MSAP statute to the extent that the decision was based on the allegations underlying the 2015 and 2017 OCR complaints, because these complaints are unrelated to (i) the hiring, promotion, or assignments of employees or personnel; (ii) the assignment of students to schools or to courses within the school, other than to carry out the approved plan; or (iii) the design and operation of extracurricular activities for students. *See* 20 U.S.C. § 7231d(b)(2)(C)(i–iii).

105.    The September 27 OII Letter states that "facts already known to OCR's Assistant Secretary based on OCR's ongoing sexual violence investigations support the OCR Assistant Secretary's conclusion that CPS'[s] statutory non-discrimination assurance obligations prohibiting

sex discrimination in the operation of extracurricular activities for students will not be met," but does not specify what "facts" OCR allegedly has obtained during any ongoing investigation that support the determination that CPS is currently not in compliance and that its non-discrimination obligations "will not be met" during the FY 2018 grant period with respect to the operation of extracurricular activities. (Ex. A.)

106. The revocation of over $4 million in funding based on unidentified factual allegations made in ongoing investigations of allegations unrelated to extracurricular activities in which the Department acknowledges that no "findings have been made" fails to even superficially comply with the requirements of the MSAP statute and other applicable authority.

107. The relevant laws and regulations allow for withholding of MSAP funds only based on a finding of prospective inability to comply with the required assurances that CPS's obligations "will be met," not punitively based on alleged failures to comply in the past.

108. Even if OCR had made some findings that CPS failed to comply with its sex-nondiscrimination obligations based on the complaint of incidents at issue in the relevant cases—which the Department acknowledges it has not—that, standing alone, cannot possibly support the determination that CPS's obligations "will [not] be met" during FY 2018 and that the FY 2018 MSAP funds could therefore be withheld.

109. Further, even putting aside the validity of the complaints OII purports to rely on in reaching its determination, the Department's determination fails to acknowledge or consider the substantial improvements that CPS has made, in consultation with OCR, to improve its responses to allegations of sexual harassment and assault.

110.     The Assistant Secretary must consider CPS's current policies, procedures, and initiatives for responding to complaints of sexual misconduct in determining whether CPS is currently in compliance with its non-discrimination obligations or will be in the future.

111.     The OCR Assistant Secretary's reliance on perceived noncompliance under Title IX unrelated to the design or operation of extracurricular activities and the Assistant Secretary's seeming failure to consider information about CPS's current compliance with Title IX, as opposed to allegations of its past noncompliance, renders the OII decision to terminate CPS's FY 2018 MSAP funds unlawful and *ultra vires*.

112.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, CPS is entitled to a declaration that the Department's actions were without statutory authority and an order that the Department's decision be set aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CPS prays for an Order by this Court:

a.  Declaring that the Department's decision to terminate CPS's FY 2018 MSAP funding without providing CPS with notice, a valid substantive basis for the termination decision, and an opportunity to be heard, was without observance of procedure required by law, and unlawful;

b.  Declaring that the Department's decision to terminate CPS's FY 2018 MSAP funding was arbitrary, capricious, and unlawful;

c.  Declaring that the Department's decision to terminate FY 2018 MSAP funds from CPS, in reliance on OCR's alleged inability to certify that CPS's MSAP civil rights assurances "will be met," was without statutory authority and contrary to law;

d.  Ordering the Department to set aside its decision to terminate FY 2018 MSAP funds from CPS;

26

e.   Enjoining Defendants from disbursing CPS's FY 2018 MSAP grant funds to other jurisdictions pending final resolution of this case;

f.   Declaring that CPS remains eligible for the $4 million 2018 MSAP funding due to CPS for FY 2018 unless and until the Department terminates those funds using the procedures required by law;

g.   Ordering the Department to continue funding CPS's MSAP grant to the same extent and in the same manner as the grant was previously funded before the Department's unlawful actions;

h.   Granting such other and further relief as may be necessary and appropriate to ensure compliance with the applicable statutory and regulatory authorities;

i.   Retaining jurisdiction of this case for the purpose of supervising the Department's full compliance with the Court's Order;

j.   Awarding CPS reasonable attorney's fees and costs in bringing this litigation; and

k.   Granting such other relief as this Court may deem proper.

Dated: November 30, 2018                     Respectfully submitted,


Michael A. Warner, Jr.                       /s/ John K. Theis
Nicki B. Bazer                               Ronald S. Safer
Jacqueline Wernz                             Kelly M. Warner
FRANCZEK RADELET                             John K. Theis
300 S. Wacker Drive, Suite 3400              Patricia T. Mathy
Chicago, IL 60606                            RILEY SAFER HOLMES & CANCILA LLP
*t* (312) 986-0300                           70 W. Madison Street, Suite 2900
*f* (312) 986-9192                           Chicago, IL 60602
maw@franczek.com                             *t* (312) 471-8700
nbb@franczek.com                             *f* (312) 471-8701
jfw@franczek.com                             rsafer@rshc-law.com
                                             kwarner@rshc-law.com
                                             jtheis@ rshc-law.com
                                             pmathy@rshc-law.com

***Attorneys for Plaintiff The Board of Education of the City of Chicago***

27