# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF THE, CITY OF CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 C 7914 |
| BETSY DEVOS, in her capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) ) | Judge Wood |
| Defendants. | ) ) | |

## DECLARATON OF PHILIP ROSENFELT IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Philip Rosenfelt, declare as follows:

1. I am an attorney licensed to practice law in the State of New York and am Deputy General Counsel for Program Service in the Office of the General Counsel of the United States Department of Education. I submit this Declaration in support of defendants' response to plaintiff's motion for a preliminary injunction and hereby attach true and accurate copies of the following:

2. **Exhibit A** is a letter dated November 27, 2018, from the United States Department of Education, signed by me, addressed to Joseph Moriarty, General Counsel of the Board of Education of the City of Chicago Law Department. I sent this letter to Mr. Moriarty on November 27, 2018.

3. **Exhibit B** is a letter from Mr. Moriarty to me that I received on or about December 21, 2018.

4. **Exhibit C** is a letter dated January 15, 2019, from the United States Department

of Education, signed by me, addressed to Mr. Moriarty.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 13, 2019

Philip Rosenfelt

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BOARD OF EDUCATION OF THE, CITY OF CHICAGO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 18 C 7914 ) |
| BETSY DEVOS, in her capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | ) Judge Wood ) ) ) ) |
| Defendants. | ) |

# EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE GENERAL COUNSEL

November 27, 2018

Mr. Joseph T. Moriarty
General Counsel
Board of Education of the City of Chicago-Law Department
1 North Dearborn Street, Suite 900
Chicago, IL 60602

SUBJECT : Magnet Schools Assistance Program Grant Awarded to the Board of Education of the City of Chicago

Dear Mr. Moriarty:

This letter is in response to your recent letter to Ann Margaret Galiatsos, regarding the Chicago Public Schools' (CPS) Magnet Schools Assistance Program (MSAP)[1] grant. Your letter's reference to "the decision to cut-off grant funding to CPS" suggests a possible misunderstanding of the actions taken by the U.S. Department of Education (Department) with regard to CPS's possible year-two continuation award funding. No funds have been "cut off" or "withheld" from CPS; nor has the Department of Education (Department) or its Office of Innovation and Improvement (OII) made a final decision regarding CPS's year-two continuation award. Instead, the Department delayed a decision regarding CPS's year-two continuation funding and extended the year-one period of performance by an additional 12 months, taking into account the funds CPS already has received that appear to be unobligated. Based on CPS's annual report submitted to the Department in May of 2018, CPS anticipated having $1,132,833 in so-called "carryover funds"; very recently, the Department's G5 grant accounting system showed that CPS had $2,177,304 in Fiscal Year (FY) 2017 MSAP funds that had not been drawn down.

As explained to CPS in OII's earlier letters of September 27, 2018, from Jason Botel, and November 2, 2018, from James Blew, the decision to delay the funding of CPS's year-two award is because the Assistant Secretary for the Office for Civil Rights (OCR) was unable to certify that certain required MSAP civil rights assurances "will be met" by CPS—as required by 20 U.S.C. § 7231d(c)—by September 30, 2018—the last date the Department could have obligated FY 2018 funds.

CPS now has additional time to both carry out its MSAP project and take steps to address issues related to the civil rights assurances, as required by 20 U.S.C. § 7231d(c). As discussed in more detail in the letter to CPS of November 2, 2018, if CPS is able to show the OCR Assistant

---

[1] 20 U.S.C. §§ 7231-7231j.

Page 2 – Mr. Joseph T. Moriarty

Secretary that the MSAP assurances "will be met," and obtain the OCR Assistant Secretary's certification that CPS will meet its civil rights assurances, OII may consider awarding year-two MSAP grant funds to CPS using FY 2019 funds. OII's decision to award continuation funding would be made in accordance with Section 75.253 of the Education Department General Administrative Regulations, which permits the Department to award continuation funding, *inter alia*, when the grantee has "made substantial progress towards achieving the goals and objectives of the project" and when "continuation of the project is in the best interest of the Federal Government" (*see* 34 C.F.R. § 75.253). This continuation decision also takes into account whether the Assistant Secretary determines, in accordance with 20 U.S.C. § 7231d(c), that the MSAP grantee will meet the required assurances (*see* 20 U.S.C. § 7231d(c)), which is a key requirement for MSAP funding.

As discussed in the September 27, 2018 letter, while there have been no findings, facts already known to OCR's Assistant Secretary based on OCR's ongoing sexual violence investigations support the Assistant Secretary's conclusion that he could not certify that CPS assurance to refrain from sex discrimination in the operation of extracurricular activities for students "will be met." 20 U.S.C. § 7231d(b)(2)(C)(iii). Additionally, the November 2, 2018, letter outlines practical steps for CPS to take in order for CPS to help demonstrate its good faith efforts to comply with its civil rights obligations and to show that its MSAP civil rights assurances in FY 2019 "will be met."

Finally, you requested a copy of the September 24, 2018, memorandum from OCR's Assistant Secretary to the Acting Deputy Assistant Secretary for OII, describing why OCR's Assistant Secretary will not certify that CPS will meet civil rights assurances relevant to the MSAP process for continuation funding. I understand that CPS received a redacted copy of that memorandum with an earlier letter.

If you have any additional questions or concerns, please contact me or Adina Kole of my office by email to Phil.Rosenfelt@ed.gov or Adina.Kole@ed.gov or by phone at 202-401-6000.

Sincerely,

Philip Rosenfelt
Deputy General Counsel for Program Services


cc:    Dr. Janice Jackson, Chief Executive Officer
        Frank Clark, Board President

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF THE, CITY OF CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 C 7914 |
| BETSY DEVOS, in her capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) ) | Judge Wood |
| Defendants. | ) | |

# EXHIBIT B



# Board of Education of the City of Chicago
## Law Department

Joseph T. Moriarty  
General Counsel

1 North Dearborn Street, Suite 900  
Chicago, IL 60602  
Telephone: (773) 553-1700  
Fax: (773) 553-1701

Mr. Philip Rosenfelt  
Deputy General Counsel for Program Services  
U.S. Department of Education  
400 Maryland Ave., S.W.  
Washington, D.C. 20202-2110

Re:   Chicago Public Schools Compliance with Civil Rights Assurances  
      Magnet Schools Assistance Program Grant Award

Dear Mr. Rosenfelt:

This letter is the response of Chicago Public Schools ("CPS") to the November 2, 2018, letter from James Blew, Acting Assistant Deputy Secretary, Office of Innovation and Improvement ("OII"). The November 2 letter stated that CPS should consider a number of specific recommendations as it "work[s] toward obtaining" the certification of the Assistant Secretary for Civil Rights that CPS "will meet" certain civil rights assurances in conjunction with fiscal year 2018 continuation grant funds under the Magnet Schools Assistance Program ("MSAP"). For reasons explained below, CPS has met and will continue to meet its civil rights assurances for the current MSAP grant period. CPS requests that the Department restore the MSAP funding to CPS for the remainder of the current school year.

### Background

CPS appreciates the opportunity to demonstrate its ongoing commitment to protecting the safety and welfare of its students. We share with the Department of Education's Office for Civil Rights ("OCR") the goal of ensuring equal access to education and the protection of the civil rights of our students. In particular, we value the critical role that OCR and CPS jointly perform in preventing and responding to sexual harassment and sexual violence in our school district. Over the past year, we have worked diligently and allocated a significant amount of resources to ensure that complaints of sexual harassment or violence are promptly investigated and remedied. Since the beginning of 2018, CPS has taken the following measures:

**Independent Investigation:** In the spring of 2018, CPS retained an independent outside investigator to review all of CPS's practices, policies, and procedures for addressing instances of alleged sexual misconduct, including harassment and assault. The investigator—a former Assistant U.S. Attorney and Illinois Executive Inspector General—identified several key areas of focus to help better support Chicago's students, including oversight of investigations, increased advocacy and counseling services, enhanced training within the CPS community, revision of

1

policies and practices, and better collection and sharing of data. CPS has already implemented many of the recommendations identified in the investigator's report.

**Office of Student Protections and Title IX:** In June 2018, CPS launched the Office of Student Protections and Title IX ("OSP"), which is responsible for managing the District's responses to all incidents of sexual misconduct, including sexual abuse, sexual harassment, and sexual bullying, involving CPS students. To CPS's knowledge, the OSP is the first office of its kind in any K-12 district in the country. The 20-member team reports directly to CPS's Chief Executive Officer, and is responsible for overseeing investigations into allegations of peer-to-peer abuse, ensuring students are supported immediately following an allegation, providing students with resources for receiving long-term support, and referring allegations of adult-on-student abuse to the Office of the Inspector General ("OIG") for investigation. CPS has budgeted approximately $3 million to support the team.

**Background Checks:** CPS has significantly strengthened how we screen prospective employees and maintain the most up-to-date information regarding existing employees. Before the 2018-2019 school year, CPS conducted over 68,000 fingerprint-based background checks of all current employees, coaches, volunteers, vendors, and Local School Counsel members. CPS also prohibited all persons from working in a CPS school for the current school year until he or she cleared such a check.

**Partnership with the Children's Advocacy Center:** This summer, CPS partnered with the Chicago Children's Advocacy Center ("ChicagoCAC") to provide training to all CPS staff members and to help connect CPS students to outside support services.

**Policies and Guidance:** CPS has made several changes to existing policies and is working to further protect CPS students with future policy changes:

- **Training and Guidance:** CPS has re-trained all of its employees during the current school year on their legal responsibilities to report abuse and neglect of students. CPS also implemented a public awareness campaign in schools and district offices to raise awareness of child abuse and the responsibilities of reporting suspected abuse.

- **Education Materials:** In addition to training, as part of a district-wide education and awareness campaign, CPS is also updating its sexual education curriculum and educational materials to better educate students on how to identify inappropriate relationships and abusive practices.

- **New Legislation:** In addition to the significant improvements to its own policies and procedures, CPS is working closely with legislators in Illinois to make changes in the law to protect students in every district in the state, including on legislation that would allow school districts to more easily remove predators from classrooms and prevent re-traumatizing victims.

**Cooperation with OCR:** Finally, as discussed in more detail below, CPS has worked extensively since 2016 with the local office of OCR in response to requests for information

2

regarding ongoing OCR investigations. Since June 2018 alone, we have produced over 9,000 pages of documents in response to OCR's requests. We have engaged directly with the local OCR office in dozens of in-person meetings and conference calls. We have devoted the time and resources of several attorneys and CPS personnel in responding to OCR's requests for information. We look forward to continuing to cooperate with OCR's ongoing investigations.

### Response to Recommendations

CPS offers the following information in response to the specific recommendations made in the November 2 letter:

1) **Cooperate fully with investigations of the Department's Office for Civil Rights (OCR) related to the MSAP civil rights assurances, including providing timely responses to requests for information (e.g., data requests, narrative statement requests, and supplemental data requests) and other informational inquiries; cooperating in scheduling witness interviews; and fulfilling the terms of existing resolution agreements. If OCR identifies problems with CPS's timeliness or cooperation, OCR's Chicago Regional Office will raise these concerns to CPS. We recommend that CPS address the concerns raised by OCR's Chicago Regional Office promptly.**

CPS has cooperated and continues to cooperate fully with the investigations of OCR's Chicago Regional Office. As the Department is aware, two of the complaints against CPS under Title IX that OCR is currently investigating have been pending since 2015 and 2017, respectively. Prior to June 12, 2018, OCR had tailored its investigation to focus on only the individual complaints and incidents at the two schools at issue in the complaints. In addition, prior to June 12, 2018, OCR had also represented to the District on multiple occasions that they were moving towards resolution on both complaints.

OCR subsequently expanded the scope of the investigation through supplemental requests dated June 12, 2018, and August 7, 2018. In these requests, OCR sought all information and documentation relating to student-on-student and adult-on-student reported incidents of sexual harassment, including assault and violence, from CPS and its charter schools for the 2017-2018 school year. In response to these expanded requests, CPS provided OCR written responses and/or documentation on June 29, 2018; July 27, 2018; August 3, 2018; August 10, 2018; August 22, 2018; September 14, 2018; October 11, 2018; and October 23, 2018. Through these responses, CPS provided narrative responses to specific questions and searched for, located, reviewed, and produced over 3,500 pages of documents.

On October 30, 2018, CPS met with representatives from OCR to discuss CPS's ongoing response to the expanded request. CPS explained (and OCR acknowledged) that it would be time intensive for CPS to request internally, receive, review, and produce to OCR all the information and documentation that OCR requested on June 12 and August 7. At that meeting, CPS and OCR agreed that CPS would continue to produce documents on a rolling basis, and provide OCR with additional information, documentation, and a status report by November 16, 2018. CPS also

3

committed at that time to provide OCR with additional information and documentation every two weeks.

Pursuant to the agreement made on October 30, CPS produced further information and documentation on November 16, 2018. Specifically, CPS provided explanations and definitions as to its previous production, supplemented spreadsheets previously provided by CPS so that OCR could more readily identify the individuals involved, produced an additional spreadsheet regarding Charter school data, and provided close to 400 additional pages of documents. By November 16, 2018, CPS had produced 4,225 pages to OCR. CPS confirmed at that time that it was continuing to collect documents from hundreds of schools and regarding hundreds of cases responsive to OCR's June 12 request. On November 30, 2018, December 7, 2018 and December 14, 2018, CPS produced approximately 5,000 additional pages of documents to OCR.

CPS remains committed to cooperating with OCR's investigations (including the investigations into the two complaints under Title IX that CPS received in 2018). While OCR has expanded the scope of the requests over the past six months from individual complaints to a systematic review, CPS has shown a continued willingness and commitment to work with OCR to address any perceived systemic issues in CPS's Title IX compliance. CPS also showed a continued willingness to cooperate with OCR when it expressed, on multiple occasions, its intention to move towards resolution of both complaints prior to June 2018.

2) **Designate an employee to be responsible for compliance with Title IX of the Education Amendments of 1972 (Title IX), per 34 C.F.R. § 106.8(a), provide training to that employee related to these responsibilities, and transmit documentation of these actions to OCR's Chicago Regional Office within a reasonable timeframe.**

CPS has designated Douglas Henning, Deputy General Counsel, as its Title IX Coordinator. CPS has notified all students and employees of Mr. Henning's name, title, office address, and telephone number by posting that information on the CPS website at https://cps.edu/Pages/officeofstudentprotections.aspx. Mr. Henning and a number of other CPS employees have received Title IX training and will receive additional training from outside counsel on Title IX and related compliance responsibilities on January 8, 2019. CPS will transmit documentation of the training to OCR after it is completed.

3) **Adopt and publish grievance procedures that provide for an appropriate resolution of complaints of sex discrimination, including sexual misconduct, and transmit documentation of these actions to OCR's Chicago Regional Office within a reasonable timeframe. Any grievance procedures must comply with the requirements of 34 C.F.R. Part 106.**

In working with OCR, CPS has modified its Title IX process, which CPS currently uses to address Title IX complaints. Specifically, CPS has formed the OSP to oversee CPS's response to all incidents of sexual misconduct involving CPS students, including investigations of peer-to-peer sexual harassment, bullying, abuse, or misconduct, to coordinate support services for students, to monitor Title IX compliance, and to provide training to district staff. CPS's OIG oversees

4

investigations of adult-on-student allegations of sexual harassment, abuse, or misconduct. Under CPS's current process, any employee who becomes aware of an incident or allegation of sexual misconduct must report the conduct to the OSP or OIG, depending on the type of perpetrator at issue.

For peer-to-peer sexual misconduct allegations, an OSP Coordinator determines if the investigation will be handled at the school level or by an OSP Investigator. If the matter is opened for an investigation through OSP, an OSP Investigator is assigned to the matter and responds immediately to the school. If the matter is handled at the school level, an OSP Coordinator works with the school to conduct a school-based investigation, which is led by school administration and the school's Title IX Representative and may include supports from the school's clinical team. Title IX Representatives also support students affected by sexual misconduct, through both CPS school-based supports and external supports. CPS will be providing training on these processes to over 500 school based representative by the end of January 2019 at its District-run schools, and we will further provide the training to charter and contract schools by the end of the second semester.

The revised processes, though not yet published in CPS's formal policy handbook, comply with the requirements of 34 C.F.R. Part 106. CPS's focus has been on creating OSP to respond to complaints and on training staff to implement the new processes and procedures. CPS described OSP's processes and resources, along with a Title IX statement, in its Board-adopted Student Code of Conduct, a copy of which is given to parents and students at the beginning of the school year. Additionally, each school has a one-page document and a poster which inform students, staff, and the school community of how to report complaints to OSP. CPS is planning to provide a more detailed explanation of OSP and its grievance procedures in a document posted on CPS's website and provided to schools by the end of January 2019. All of this information will ultimately be codified in Board policy. CPS would welcome OCR's input on the content and publication of these procedures.

4) **From the date of this letter through the end of the 2018-2019 school year, promptly transmit any complaint of sexual misconduct received by CPS or CPS schools to OCR's Chicago Regional Office; and**
5) **From the date of this letter through the end of the 2018-2019 school year, promptly transmit to OCR's Chicago Regional Office the full case file for any complaint of sexual misconduct that has been resolved (whether formally or informally, including any appeal) by CPS or CPS schools.**

These two requests contemplate a formal monitoring of CPS for the remainder of the 2018-2019 school year. Regarding recommendation 4, CPS can commit to producing a spreadsheet reflecting incidents of sexual misconduct received by CPS or CPS schools that are contained in the District's incident reporting database. CPS produced this information for the 2017-2018 school year, and will produce a similar spreadsheet and can do so at regular intervals (CPS suggests every 3 months) up until the conclusion of the school year.

For the second recommendation, CPS is willing to work with OCR to obtain the information relevant to OCR's ongoing investigations. However, as we have discussed with the

5

OCR Chicago Regional Office, the production of the entire case file for every complaint of sexual misconduct would be a substantial administrative and logistical burden on CPS compliance staff and the staff at CPS schools. To the extent necessary, CPS would be willing to invite a representative from OCR Chicago Regional Office to CPS's office to demonstrate the effort required to gather this information. We would like to discuss the possibility of a less burdensome method of providing the OCR with information regarding investigatory outcomes. For example, CPS would be willing to accommodate more tailored requests for information regarding specific complaints of sexual misconduct identified by OCR. We would recommend that that conversation involve CPS staff and the OCR Chicago Regional Office.

More generally, CPS notes that these two recommendations seek prospective monitoring of future complaints, a procedure that is typically found in resolution agreements under Section 302 or 303 of the OCR *Case Processing Manual*. As noted above, and as previously communicated to OCR staff, CPS remains interested in negotiating a resolution agreement that could include prospective monitoring. Such an agreement could result in a global resolution of the MSAP funding dispute as well as resolve the outstanding Title IX complaints.

\*    \*    \*

Since 2017—when the Department first awarded the five-year MSAP grant to CPS—CPS has taken extensive voluntary action to protect our students from sexual harassment and sexual violence. We have at the same time worked closely with OCR's Chicago Regional Office to provide OCR with the information necessary to demonstrate CPS's Title IX compliance. Based on the actions described above and CPS's commitment to provide additional information to OCR's Chicago Regional Office, we believe that CPS has met and will continue to meet its civil rights assurances. We accordingly request that the Assistant Secretary for Civil Rights certify that CPS will meet its civil rights assurances in conjunction with the MSAP grant funds, and that the Office of Innovation and Improvement restore the second year of the MSAP funds for the current school year. We further request a response to this letter by January 15, 2019. We appreciate your commitment to prioritize this matter, and we look forward to your response.

Respectfully submitted,

Joseph T. Moriarty
General Counsel
Board of Education of the City of Chicago

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF THE, CITY OF CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 C 7914 |
| BETSY DEVOS, in her capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) ) | Judge Wood |
| Defendants. | ) | |

# EXHIBIT C



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE GENERAL COUNSEL

January 15, 2019

Mr. Joseph T. Moriarty
General Counsel
Board of Education of the City of Chicago
1 North Dearborn Street, Suite 900
Chicago, IL 60602

      Re:    Magnet Schools Assistance Program Grant Awarded to the Board of Education of the City of Chicago

Dear Mr. Moriarty,

Thank you for your response to the letter from Jim Blew dated November 2, 2018, sent via email to me late Friday afternoon, December 21, 2018. We are encouraged by the efforts outlined in the letter towards obtaining certification from the Assistant Secretary for Civil Rights that you will meet your Magnet Schools Assistance Program (MSAP) civil rights assurances.

As previously explained in my letter of November 27, 2018, the Department has not yet made a decision regarding the Chicago Public Schools' (CPS) year-two continuation award. Instead, the Department delayed a decision regarding CPS's year-two continuation funding, and extended the year-one budget period by an additional 12 months, taking into account the unobligated funds CPS already had received. Under this approach, the Department provided CPS with additional time to both carry out its MSAP project, and to take steps to address issues related to the MSAP civil rights assurances, as required by 20 U.S.C. § 7231d(c). Although the Department had the legal authority to exercise discretion under 34 C.F.R. § 75.253 to make a decision not to continue CPS's MSAP project on September 30, 2018—the last day of availability for fiscal year (FY) 2018 funds—the Department chose to delay the year-two funding decision in order to work with CPS in good faith while CPS addresses the serious civil rights issues in the district, and makes efforts to demonstrate its compliance with its civil rights obligations to the Assistant Secretary for Civil Rights. As you know, a prerequisite for an MSAP continuation grant is certification by the Assistant Secretary for Civil Rights that CPS's assurances will be met.

To that end, the information you now have provided has been shared with the Office for Civil Rights (OCR) for review. We also appreciate your expressed interest in negotiating an agreement to resolve the open Title IX complaints, and this interest has been conveyed to OCR's regional office in Chicago that is handling those complaints.[1]

---

[1] The MSAP funding decision is also dependent on the determination of Department of Education's Office for Elementary and Secondary Education (OESE), which is the MSAP program office. (Previously, the

Page 2 – Mr. Joseph T. Moriarty

As a reminder, to the extent you have specific communications regarding the open Title IX complaints, and the resolution of those complaints, you should contact Adele Rapport, the Regional Director of OCR's regional office in Chicago, at Adele.Rapport@ed.gov, or (312) 730-1495. All communications about *Board of Education of the City of Chicago v. DeVos* and the MSAP year-two funding decision should continue to be directed to Assistant United States Attorney Thomas Walsh and myself.

Without commenting on the substance of the representations made in your letter that is now being reviewed by OCR, we appreciate your efforts to work toward obtaining certification from the Assistant Secretary for Civil Rights that you will meet your MSAP civil rights assurances in FY 2019.

If you have any further questions, please contact me at Phil.Rosenfelt@ed.gov, (202) 401-6000 or Thomas Walsh at Thomas.Walsh2@usdoj.gov, or (312) 353-5312.

Sincerely,

*Philip Rosenfelt*
Philip Rosenfelt
Deputy General Counsel for Program Service

cc:
    Ronald S. Safer,
    Kelly M. Warner
    John K. Theis
    Patricia T. Mathy
    Michael A. Warner, Jr.
    Nicki B. Bazer
    Jacqueline Wernz
    Assistant U.S. Attorney Thomas Walsh
    Assistant U.S. Attorney Patrick Johnson

---

MSAP program office was the Department's Office of Innovation and Improvement.) OESE will determine—in accordance with 34 C.F.R. § 75.253—whether CPS has made substantial progress in its grant project, and whether it is in the Federal interest to continue the project. In other words, the requirement that CPS meet the MSAP civil rights assurances is only one part of the MSAP year-two continuation funding determination made by the Department. To the extent that the MSAP office has questions about the year-two continuation funding, *e.g.*, expenditures of first year grant funds for proposed activities, those questions will be forwarded to CPS separately.