UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BOARD OF EDUCATION OF THE, CITY OF CHICAGO, ) ) ) | |
| Plaintiff, ) ) | No. 18 C 7914 |
| v. ) ) | Judge Wood |
| BETSY DEVOS, Secretary of the United States Department of Education, *et al.*, ) ) ) | |
| Defendants. ) | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

CPS's complaint should be dismissed for three reasons. *First*, although the OCR Assistant Secretary was unable to certify that CPS would meet its nondiscrimination assurances in time to receive FY 2018 funds, Education has not denied CPS's year-two continuation grant and those funds remain available (CPS does not seem to contend otherwise). Education's decision to delay its funding decision to allow CPS time to meet its assurances does not affect any legal rights or obligations of CPS. Absent a *final* determination on a year-two grant to CPS, all four of CPS's APA claims should be dismissed. *Second*, even if the court were to deem Education's delay to be a final agency action, CPS's Counts III and IV should still be dismissed because the actual challenged decision is committed to the agency's discretion and is therefore unreviewable. That is, CPS cannot cite to a single "manageable substantive standard" against which to review the OCR Assistant Secretary's judgment that CPS will not meet its nondiscrimination assurances. *Third*, even if the court were to deem the agency's delayed decision to constitute final agency action, CPS's Counts I and II should also still be dismissed because the agency's delayed funding decision is neither a termination, suspension, nor a withholding of CPS's year-two continuation grant.

**Argument**

I. **No Final Agency Action**

As explained in the Department's opening brief, Education has not made a final decision whether to award year-two continuation funding to CPS for its MSAP project, and delaying that decision has not affected any rights or obligations of CPS. Thus, Education's delayed funding action satisfies neither prong of the finality test set forth in *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997). CPS does not seem to dispute that its MSAP grant has not been terminated and that funding for its year-two continuation grant is still available. Yet CPS insists in its response brief that Education has made a final decision to deny MSAP funds to CPS. That is factually incorrect.

As for the first *Bennett* prong—that the action marks the consummation of the decision-making process—CPS contends that Education has completed its decision-making process and has denied CPS its MSAP continuation funding. CPS Resp., 4-5. In support, CPS selectively cites Education's September 27, 2018 letter, which states that Education made a "decision not to award FY 2018 MSAP funds to CPS." CPS Resp., 4. CPS further claims that this decision was "the result of an internal decision-making process." *Id.* But just because Education was engaged in an internal decision-making *process* does not mean that its decision to delay was the *consummation* of the process. *See Perrigo Research v. FDA*, 290 F.Supp.3d 51, 62 (D D.C. 2017) ("Putting off a decision is certainly not a consummation of the agency's decision-making process.") (citing *Bennett*, 520 U.S. at 177-178).

CPS misunderstands the September 27 letter in two important ways. First, CPS confuses two different funding terms — Education's *FY 2018 MSAP funds* and CPS's *year-two continuation funds*. "FY 2018 MSAP funds" are those funds that Congress provided Education to award MSAP grants during FY 2018, which ran from October 1, 2017, to September 30, 2018. In contrast, CPS's "year-two continuation funds" (or year-two continuation grant) is the actual MSAP grant

2

for the second budget period of CPS's multi-year project. Although MSAP applicants are approved for a five-year project period, a separate continuation grant is made for each budget period. *See* 20 U.S.C. § 7231h(a); 34 C.F.R. § 75.251. Before Education awards a grant for a subsequent budget period, it conducts a new review to determine whether the district meets the requirements for a continuation grant, and if so, can award up to the amount proposed by the grantee and approved by Education at the time of the initial award. *See* 20 U.S.C. § 7231d(c); 34 C.F.R. § 75.253(a)(2) and (4), § 75.253(d)(2)(ii) and (d)(3). There is no requirement to fund consecutive budget periods of a multi-year project with funds from consecutive fiscal year appropriations. *See* 31 U.S.C. § 1502.

Nevertheless, throughout its brief, CPS mistakenly uses the two funding terms interchangeably, claiming that Education made a final decision denying "MSAP funds." But as the September 27 letter makes clear, Education could not award CPS its year-two continuation grant by September 30, 2018 because the OCR Assistant Secretary was unable to certify that CPS would meet its MSAP nondiscrimination assurances by the end of FY 2018. The letter thus explained that Education could not award CPS its year-two continuation grant from the FY 2018 funding source (since FY 2018 ended September 30, 2018). The consequence of all of this is simply that if Education ultimately awards CPS a year-two continuation grant in the coming months (which it still may), those year-two funds will come from FY 2019 funds, not FY 2018 funds. Nowhere in the letter did Education state that it had denied or would deny CPS its year-two continuation grant.[1]

---

[1] Education explicitly stated three times in the letter that its "denial" relates to the FY 2018 funding source — Education (1) is "unable to award *FY 2018* continuation grant funds to CPS," (2) made a "decision not to award *FY 2018 MSAP funds* to CPS," and (3) concluded that "CPS's project is not eligible for *FY 2018 MSAP continuation funding*." Complt., Ex. A.

3

Education further wrote in the letter that it was "prepared, however, to extend the current performance period to provide additional time for CPS to continue to carry out the project using its remaining unobligated FY 2017 funds and to take steps to meet its civil rights assurances . . . ." The letter stated that "in the next 30 days, OII will contact CPS regarding the current performance period extension, as well as steps that must be taken by CPS in order for OII to consider awarding continuation grant funds to CPS using *FY 2019 funds*."[2] Complt. Ex. A (emphasis added). These statements did not convey that any final decisions had been made. This point was reiterated in Education's November 27 letter, stating that MSAP continuation funds for CPS's year-two budget period remain available and will be awarded "using FY 2019 funds" if CPS can satisfy the continuation grant requirements. Complt., Ex. C.

CPS next mischaracterizes the September 27 letter by claiming that the purported funding denial was "the result of an internal decision-making process." CPS Resp. 4. Here, CPS conflates the *funding* decision made by Education and the *certification* decision made by the OCR Assistant Secretary. These are different decisions, made by different decision-makers, following different timelines and decision-making processes. The certification decision is based on the OCR Assistant Secretary's determination of whether the MSAP nondiscrimination assurances "will be met" by CPS. 20 U.S.C. § 7231d(c). The funding decision is based in part on CPS's satisfaction of various grant eligibility requirements, of which the certification decision is but one.

The proper focus for APA finality purposes is on the funding decision, which has not yet been made. That is because the possible adverse effect to CPS of a *certification* denial is

---

[2] Assuming that CPS satisfies all eligibility requirements and receives MSAP continuation funds from FY 2019, this delay itself will not affect the overall MSAP funding for its project. As explained, grant funds for CPS's year-two continuation award, as well as the remaining three years of funding, may still be awarded by Education, as long as CPS meets all MSAP eligibility requirements.

contingent on a subsequent decision to be made by Education about CPS's grant. *See Rhea Lana, Inc. v. U.S. Dep't of Labor*, 824 F.3d 1023, 1032 (D.C. Cir. 2016) (agency action is not final if the adverse effects of the action depend on the contingency of future administrative action). Thus, although the OCR Assistant Secretary concluded in September 2018 that he could not at that time certify CPS's compliance with the MSAP nondiscrimination assurances, this was not the consummation of the *funding* decision-making process by Education — that process is ongoing.

More importantly, Education did not treat the OCR Assistant Secretary's certification denial as the consummation of the funding decision-making process. In assessing whether a particular agency action qualifies as final for purposes of judicial review, courts look to "the way in which the agency subsequently treats the challenged action." *Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016); *Lannett Co. Inc. v. FDA*, 300 F.Supp.3d 34, 44 (D.D.C. 2017). Rather than treat the OCR Assistant Secretary's certification denial as the end of the decision-making process by denying funding and terminating the project, Education explained to CPS that it would work with CPS to secure MSAP continuation funding.[3] Education then extended CPS's year-one budget period, allowed CPS to use the remaining $1.5 million of unused funds to continue its MSAP project, and provided CPS with detailed recommendations for working toward securing the OCR Assistant Secretary's certification. Complt., Ex. C.

This case resembles the circumstances in *Lannett*, *supra*, where the court held that the FDA's decision to rescind its previous marketing approval for a company's generic drug was not

---

[3] Had Education actually denied continuation funding, such a decision would have ended the MSAP project and triggered an orderly closeout of the grant, pursuant to Education's grant administration regulations. *See* 34 C.F.R. § 75.253. It is undisputed that Education has not pursued the process described in those rules. *See Soundboard Association v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (in determining whether agency action is a final decision, courts consider whether the agency followed its decision-making process set out in governing statutes and regulations).

a final decision under the APA. 300 F.Supp.3d at 43-46. In that case, the FDA rescinded marketing approval for a drug the FDA had mistakenly approved, and the pharmaceutical company challenged the rescission under the APA. At the same time that the FDA rescinded the approval, however, it explained to the company that its marketing application was "now in pending status" and further explained what steps the company should take for approval of its application. *Id*. at 44. Given the FDA's subsequent treatment of its rescission, the court concluded that the rescission "did not represent the conclusion of its decision-making process . . . or its ultimate decision to either approve or deny the company's application." *Id.* Similar to the FDA's subsequent treatment of its rescission decision, Education's subsequent treatment of the OCR Assistant Secretary's non-certification shows that Education's funding actions are not final for purposes of APA review and that this court should thus not interfere in the ongoing process.

Education's treatment of the OCR Assistant Secretary's non-certification also distinguishes this case from cases like *Sackett v. EPA*, 566 U.S. 120 (2012), relied on by CPS. CPS. Resp. 6. The EPA in *Sackett* engaged in extensive factfinding and issued findings and conclusions in a compliance order under the Clean Water Act, holding that a landowner violated the Clean Water Act, and directing that the landowner restore the property pursuant to an EPA-approved restoration plan. The EPA gave no indication that the order was not final and in fact denied the landowner's request for a reconsideration hearing. Under those circumstances, the court understandably held that the order marked the consummation of EPA's decision-making process, even though the compliance order allowed the landowner to engage in informal discussions with the EPA about the terms and requirements of the order. *Id*. at 127 (holding that the mere possibility that an agency might reconsider its decision "does not suffice to make an otherwise final agency action nonfinal"). Unlike the EPA in *Sackett*, Education has made clear in its communication with

6

CPS — starting with its September 27 letter — that the OCR Assistant Secretary's non-certification does not constitute a final agency funding decision.[4]

Even if the court were to find that Education has completed its funding decision-making process, CPS cannot satisfy the second prong of the *Bennett* finality test, that the action be one "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" 520 U.S. at 178. In the single paragraph devoted to the second *Bennett* prong, CPS's response does not identify any deprivation of rights or legal consequences that resulted from Education's decision to delay a decision about year-two MSAP funding to CPS.

CPS cites several cases that stand for the unremarkable proposition that a denial of government benefits results in legal consequences sufficient to meet the second *Bennett* prong. CPS Resp., 7. But CPS has suffered no such denial in this case. Had Education denied year-two continuation funding to CPS, it would have ended CPS's MSAP grant, thereby denying CPS not only the $4 million requested for its year-two budget period but also the additional $8 million budgeted for the remaining three MSAP budget periods. Education's decision to delay its funding decision, however, has not altered any legal rights or obligations of CPS. As explained in the Department's moving brief — and undisputed by CPS — eligibility for a non-competing continuation grant for a multi-year project does not bestow a legal right to funds from consecutive FY appropriations. *See* 31 U.S.C. § 1502. So the fact that Education may award CPS a year-two

---

[4] The other cases CPS cited for this proposition are also inapplicable. In *U.S. Army Corps of Engineers v. Hawkes*, 136 S.Ct. 1807, 1813 (2016), there was no dispute that the Corps' action satisfied the first *Bennett* condition. *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 981 (2005) does not involve the APA or any analysis of its finality requirements. And in *XP Vehicles, Inc. v. Dep't of Energy*, 118 F.Supp.3d 38, 62-63 (D.D.C. 2015), the court found the challenged agency decision was final because the agency had already denied plaintiff's reconsideration request prior to the lawsuit being filed.

continuation grant from FY 2019 funds rather than from FY 2018 funds does not affect any legal rights of CPS, nor does it impose any obligations.

Notwithstanding that CPS cannot satisfy either prong of the *Bennett* test, even a practical approach to the finality issue cannot save CPS's argument. There is no dispute that Education could yet award CPS a year-two continuation grant in the future if CPS meets its MSAP nondiscrimination assurances, and funds are still available to do so.[5] There is also no dispute that both parties are actively working to achieve two, presumably shared, goals — promoting STEM magnet schools in CPS while also ensuring that CPS is protecting its students and complying with its nondiscrimination obligations under the MSAP. Education has permitted CPS to continue to use $1.5 million for magnet schools that it would not otherwise be entitled to if the project had been terminated, and it is also offering CPS additional time, guidance, and the positive leverage of MSAP grant funding to comply with its nondiscrimination obligations under the MSAP statute. Judicial intervention at this point would be premature and would interfere with the parties' shared goals.

And while Education's decision to delay a funding decision may have some practical, possibly temporary effect on CPS programming in terms of scaling back or borrowing funds, this is not significant enough to warrant judicial intervention now — before Education has completed its decision-making process and determined, among other things, whether CPS can demonstrate to

---

[5] CPS claims it is "undisputed that the Department decided to reallocate CPS's second-year grant funds to other jurisdictions." CPS Resp., 6. Again, Education did not reallocate CPS's *second-year grant funds* to other jurisdictions, but rather reallocated unused *FY 2018 MSAP funds*, thereby freeing up FY 2019 funds that can be awarded to CPS for its full year-two continuation award should CPS satisfy meet its MSAP requirements. CPS does not and cannot dispute that the resulting effect of the Department's administrative actions is to maintain sufficient FY 2019 funds to award CPS its year-two continuation award if it meets MSAP requirements. Again, Education has taken care to preserve its ability to fund CPS's year-two grant if and when it is made.

the OCR Assistant Secretary that its nondiscrimination assurances will be met for the year-two continuation budget period. CPS has already adjusted its programming for the 2018-19 school year; it does not claim that the remaining $700,000 from the MSAP award is insufficient to complete the year; and Education's decision about whether to award year-two funding from FY 2019 funds will be made within the next five months. For all of these reasons, the court should allow Education to complete its decision-making process regarding CPS's MSAP funding.

## II.     Decision Committed to Agency Discretion

Even if the delay in CPS's year-two continuation funding were deemed final agency action for the purposes of APA review, the actual challenged agency action is committed to agency discretion and is therefore unreviewable. As explained in our moving brief, there are no defined standards that guide the OCR Assistant Secretary's discretionary judgment as to whether CPS will meet its nondiscrimination assurances in the future. 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). CPS now asserts that it is challenging only Education's funding delay and not the OCR Assistant Secretary's certification decision. That assertion is belied by the allegations in Counts III and IV of CPS's complaint that all pertain to the OCR Assistant Secretary's decision. In the alternative, CPS maintains in its response that there is law for a court to apply in evaluating the OCR Assistant Secretary's decision, and points to the MSAP requirement that the certification denial relate to one of the three specific subject matter areas identified in the MSAP statute. CPS argues that a court could review under the APA whether the OCR Assistant Secretary's certification denial related to one of these three areas. That is a dead end. First and foremost, CPS does not actually challenge the agency's action on this basis (nor should it).

The OCR Assistant Secretary's discretionary decision not to certify in FY 2018 was based on his judgment that CPS did not demonstrate that it would meet its MSAP nondiscrimination assurance obligations *in the operation of extracurricular activities*. Complt. Exs. A, D. Education

9

explained that facts gathered during OCR's ongoing investigations included evidence of potential Title IX violations in extracurricular programs, as well as potential district-wide Title IX violations that affected extracurricular programs. *Id.* OCR based its conclusion on at least four Title IX complaints it was investigating against CPS, as well as 358 reports to CPS of incidents of sexual harassment or misconduct by district staff, volunteers, and other adult third parties covering four school years. Complt. Ex. D.

Although the court cannot necessarily tell from this record whether or how many of these investigations and reports relate to extracurricular activities, CPS certainly knows. Unsurprisingly, CPS does not contend that none of the above investigations and reports relate to CPS's extracurricular activities. In other words, although CPS claims it could theoretically assert an APA challenge that the certification denial was not related to extracurricular activities, it wisely does not do so in this case. For this reason alone, CPS's claims in Counts III and IV should be dismissed for failure to state a claim.[6]

Even if none of the open OCR investigations or the 358 reported incidents of sexual abuse relate in any way to CPS's extracurricular activities (not a serious possibility), OCR's concerns also cover systemic noncompliance with Title IX obligations. For example, it is undisputed that prior to the 2018-19 school year, CPS was missing basic mechanisms that are needed to properly prevent and respond to incidents of sexual violence against CPS students — CPS did not have a

---

[6] The *Chicago Tribune* investigative reports cited in our moving brief provide additional examples of CPS sexual abuse related to extracurricular activities. In addition to noting that sexual abuse by athletic coaches is "a particular area of concern," the *Tribune* described one basketball coach who was investigated for misconduct seven times in 14 years including for alleged sexual propositions of student-athletes. He finally resigned under pressure, but soon found jobs in other districts. Another report described a volunteer coach who had four felony convictions for possessing or dealing drugs. Ignoring warnings about this man, school officials allowed him to coach, and he went on to rape a student 40 times. *See* http://graphics.chicagotribune.com/chicago-public-schools-sexual-abuse/.

Title IX coordinator, did not have a team charged with responding to complaints of sexual violence, and did not have a comprehensive set of published Title IX policies or comprehensive training for students, staff, and volunteers. Complt. Ex. C; Rosenfelt Decl. ¶ 3. Moreover, the CPS-commissioned internal report instigated by the *Chicago Tribune* investigation detailed a district-wide failure by CPS to properly respond to student complaints of sexual violence. *See* http://blog.cps.edu/wp-content/uploads/2018/08/CPS-Preliminary-Report.pdf.

It would certainly be reasonable for the OCR Assistant Secretary to conclude that these potential district-wide violations cover every facet of CPS education and programming, including its extracurricular activities. However, there are no "judicially manageable standards" available for a court to evaluate the OCR Assistant Secretary's concerns about CPS's future compliance with its MSAP nondiscrimination assurances as they relate to CPS's operation of extracurricular activities. Given the undisputed facts of this case, the OCR Assistant Secretary's judgment that these potential district-wide Title IX violations relate to CPS's extracurricular activities is "committed to agency discretion" and therefore is not reviewable.

CPS also appears to argue that standards exist that allow a court to review the OCR Assistant Secretary's discretionary prediction as to whether CPS will comply with its nondiscrimination obligations in the future. CPS Resp., 10-11. Yet CPS does not cite a single statute, regulation, standard, or guideline for the court to use in testing the OCR Assistant Secretary's judgment in this regard. And while CPS repeats its theory that past violations that are still under investigation are not "predictive" of CPS's future noncompliance, this theory is unsupported by common sense or any law the court can apply. Moreover, it ignores the fact that at least some of the potential Title IX violations at issue were ongoing at the time of the OCR Assistant Secretary's non-certification in September 2018.

11

Finally, CPS claims that it can challenge the OCR Assistant Secretary's non-certification as arbitrary if it is not based on *new* information that OCR did not have when the OCR Assistant Secretary previously certified CPS's assurances in 2017. But again, CPS fails to identify any law that imposes such a condition on the OCR Assistant Secretary's exercise of discretion in each succeeding year when a new certification is required. In any event, CPS's factual predicate is baseless; it cannot seriously argue that nothing changed between year one and year two, as anyone who read the news about sexual assaults in CPS schools and after-school programs can attest.

In any event, it is clear from the undisputed facts that plenty of "new" information was available after 2017, even in the public record (not to mention in pending OCR investigations), for the OCR Assistant Secretary to consider before making the non-certification in FY 2018. For example, in addition to the *Chicago Tribune* investigative findings and the CPS-commissioned independent report, OCR investigated the two existing Title IX complaints for an additional year. It received and began investigating another two complaints. It discovered that CPS had received hundreds of additional sexual violence complaints. And it learned from CPS that the district's policies, procedures, and resources were insufficient to properly prevent and respond to incidents of sexual violence against CPS's students.

### III. Notice-and-Hearing Requirements Do Not Apply.

We also explained that none of the three federal laws or regulations requiring procedural protections cited by CPS in Counts I and II apply here. These laws relate to funding decisions that constitute either a termination, a suspension, or a withholding, as described in those laws. A delay in making a second-year funding decision based on a declination to certify an MSAP assurance is none of these. In response, CPS mainly advances the flawed argument that Education's decision to delay its decision regarding year-two MSAP funding to CPS constitutes a decision to *terminate* funding. As we explain above as it pertains to finality, Education has not terminated CPS's grant

12

or its year-two continuation funding. As such, the court should summarily dismiss the procedural claims based on 2 C.F.R. § 200.340-41 in Count I and Title IX, 20 U.S.C. § 1682, in Count II.

The Title IX claims also should be dismissed simply because Education took no action pursuant to Title IX. It is undisputed that both the OCR Assistant Secretary's non-certification and the resulting decision to delay a decision on funding were taken pursuant to Education's MSAP authority, *not* as a remedy under Title IX. CPS disputes none of this in its response, but rather recites the procedural requirements that OCR *would* need to follow *if*, in fact, OCR were to proceed to terminate federal financial assistance to CPS due to Title IX violations, which it has not done. Accordingly, even if the court were to conclude Education made a final funding decision terminating CPS's MSAP grant (which it has not), the notice-and-hearing requirements under Title IX would not apply.

The only real argument CPS tries to make regarding these procedural laws relates to the General Education Provisions Act (GEPA), 20 U.S.C. § 1234d(b), in Count I. CPS seems to argue that Education's delay in making a decision about CPS's year-two continuation funding could be construed as a withholding of "further payments," triggering GEPA procedural requirements. CPS's reliance on 20 U.S.C. § 1234d is misplaced. As the Department previously explained, a "withholding" under GEPA means a withholding of payments from a grant that has *already* been awarded, which is simply not the case here. When Education awards an MSAP grant, the funds for the budget period are "obligated" to the district. *See* Department of Education Discretionary Grants Handbook, p. 217 (*available at* https://www2.ed.gov/policy/gen/leg/foia/acshbocfo4a.pdf). Education does not make a payment to the grantee, but rather obligates funds against which the district can draw down to liquidate obligations incurred under the grant. That drawdown is the "payment" to the grantee, because actual funds go from the Department to the grantee to a payee. Accordingly, withholding "further payments" only makes sense in the context of a discretionary

13

grant that has already been awarded and when Education denies the district's right to draw down obligated grant funds.

Moreover, the GEPA provision that CPS cites, 20 U.S.C. § 1234d, must be read in conjunction with 20 U.S.C. § 1234c. *See* 20 U.S.C. § 1234d(a) ("In accordance with section 1234c of this title, the Secretary may withhold from a recipient, in whole or in part, further payments"). Under 20 U.S.C. § 1234c, entitled "Remedies for Existing Violations," Education may "withhold further payments" under a program if it believes "any recipient of funds under any applicable program is failing to comply substantially with any requirement of law applicable to such funds." This section is inapplicable in this case.

Section 1234c does not apply to this case for two reasons. *First*, the statute is clear; § 1234d applies only to a "recipient," which is defined in the statute as "a recipient of a grant . . . under an applicable program." 20 U.S.C. § 1234i. Since CPS is not a recipient of a year-two continuation grant, any delay in awarding that grant cannot constitute a GEPA withholding. *Second*, Education did not find that CPS "fail[ed] to comply substantially with any requirement of law" applicable to CPS's MSAP grant. Education delayed its year-two continuation funding decision because of the OCR Assistant Secretary's concerns about CPS's *future* compliance with its MSAP nondiscrimination assurances during its year-two continuation budget period. Education has made no finding with respect to noncompliance with CPS's current grant award. As a recipient of FY 2017 MSAP funds, CPS continues to spend FY 2017 funds and is carrying out the activities it proposed for the first year of its project during its extended first budget period. *See* Application of the Commonwealth of Pennsylvania, Withholding Proceeding, No. 92-106-W (1992) (noting that Education may only withhold payments under 20 U.S.C. § 1234c when a district has failed to comply with the terms of its grant award) (attached as Exhibit A). Therefore, no CPS MSAP funds have been subject to withholding, so GEPA does not apply here.

14

Finally, this interpretation of 20 U.S.C. §§ 1234c and 1234d is also supported by Education's Discretionary Grants Handbook, which defines "withholding of payment" as an action by Education that "suspends a grantee's ability to access its grant funds until the grantee takes [corrective action]. *See* Department of Education Discretionary Grants Handbook, p. 161 (*available at* https://www2.ed.gov/policy/gen/leg/foia/acshbocfo4a.pdf). And contrary to CPS's contention, the fact that the definition of "withholding of payment" incorporates the procedural protections under § 1234d(d) does not change the construction of "withholding" as a remedy available only after a grant has been awarded.

## Conclusion

For the foregoing reasons, this court should deny plaintiff's motion for a preliminary injunction and dismiss its complaint.

        Respectfully submitted,

        JOHN R. LAUSCH, Jr.
        United States Attorney

        By: s/ Patrick W. Johnson
            PATRICK W. JOHNSON
            Assistant United States Attorney
            219 South Dearborn Street
            Chicago, Illinois 60604
            (312) 353-5327
            patrick.johnson2@usdoj.gov