# EXHIBIT A

*Petracca*

# UNITED STATES DEPARTMENT OF EDUCATION
### WASHINGTON, D.C. 20202

| | |
|---|---|
| APPLICATION OF THE COMMONWEALTH OF PENNSYLVANIA, | Docket No. 92-106-W |
| | Withholding Proceeding |
| | ACN: 03-10201 |
| Applicant. | |

## INTERLOCUTORY DECISION

Appearances:

    Jeffrey F. Champagne, Esq., Chief Counsel for the Pennsylvania Department of Education.

    Ronald B. Petracca, Esq., Office of the General Counsel, for the Assistant Secretary for Special Education and Rehabilitative Services, U.S. Department of Education.

Before:

    John F. Cook, Chief Administrative Law Judge.

-2-

## I.   PROCEDURAL BACKGROUND

On September 17, 1992, Robert R. Davila, Assistant Secretary, Office of Special Education and Rehabilitative Services (hereinafter, the Assistant Secretary) of the U.S. Department of Education (Department), issued a notice of intent to withhold $3,555,826 of the Pennsylvania Department of Education's (Pennsylvania or State) fiscal year 1992 grant award under Part B of the Individuals with Disabilities Education Act (IDEA).   The Assistant Secretary also included a notice of intent to suspend Pennsylvania's authority to obligate $3,555,826 of fiscal year 1992 Part B funds pending the outcome of a hearing on the withholding determination.   The determination was based on a final audit report, issued on June 30, 1992, by the Department's Office of Inspector General (OIG), Region III.

On September 28, 1992, the Office of Administrative Law Judges (OALJ) received Pennsylvania's application for hearing. On October 2, 1992, the tribunal issued a Notice of Receipt of Application for Hearing.

On September 25, 1992, Pennsylvania also sent a letter to the Assistant Secretary, attempting to show cause why he should not suspend $3,555,826 of Pennsylvania's fiscal year 1992 Part B grant award, which in the alternative, requested the Assistant Secretary to issue three written statements, in which case Pennsylvania would waive its right to respond to the opportunity to show cause.   On September 30, 1992, the Assistant Secretary responded by letter to Pennsylvania in which he issued the three written statements requested by Pennsylvania and concluded that the State had failed to show cause why $3,555,826 of its fiscal year 1992 Part B grant award should not be suspended pending the outcome of the hearing on the withholding determination.

On November 3, 1992, in response to a joint motion by the parties, the undersigned issued an Order Staying Proceeding Pending Mediation.   Pennsylvania, however, raised a jurisdictional issue that was not submitted to mediation.

On November 23, 1992, Pennsylvania filed its Applicant's Brief on Jurisdictional Issues.   On December 18, 1992, the Assistant Secretary filed his Response of the Assistant Secretary to the Applicant's Brief on Jurisdictional Issues.

## II.   ISSUES

A.   Can the Assistant Secretary properly bring the present proceeding as a withholding action, or must it be brought as a recovery of funds proceeding instead?   If it must be brought as a recovery of funds proceeding, should the present proceeding be dismissed for failure to establish appropriate jurisdiction on the issue of withholding?

-3-

B.  Does the Assistant Secretary's September 17, 1992 notice attempt to remedy an existing and present violation of a Federal program requirement, or does it address a past violation of a Federal program requirement?

## III. **DISCUSSION**

Pennsylvania argues that the sanction of withholding is appropriate only to remedy current violations, whereas the audit in this matter is based on a past violation.  Pennsyvania further contends that the relevant case law supports the conclusion that the use of the sanction of withholding is not appropriate in the current proceeding.  According to Pennsylvania, a withholding action will inflict undue harm on the State.

The Assistant Secretary asserts that his September 17, 1992 notice of intent to withhold funds remedies an existing violation of the law.  The Assistant Secretary claims that Pennsylvania's arguments that the September 17, 1992 letter is not a valid withholding determination are unpersuasive.  The Assistant Secretary also contends that the Department's suspension and withholding determinations protect the legitimate interests of Pennsylvania, the Department, and the other States.

The September 17, 1992 notice begins with the words, "The purpose of this letter is to inform your agency of my intent to withhold, pursuant to 20 U.S.C. §§ 1234c and 1234d, $3,555,826 of the Pennsylvania Department of Education's . . . fiscal year 1992 . . . grant award."  Turning to the statutes relied upon by the Assistant Secretary, 20 U.S.C. § 1234c is entitled "Remedies for existing  violations" and states in pertinent part:

(a) Whenever the Secretary has reason to believe that any recipient of funds under any applicable program is failing to comply substantially with any requirement of law applicable to such funds the Secretary may--

(1) withhold further payments under that program, as authorized by section 1234d of this title . . . .

20 U.S.C. § 1234c.

20 U.S.C. § 1234d(a) states in pertinent part:

In accordance with section 1234c of this title, the Secretary may withhold from a recipient, in whole or in part, further payments (including payments for administrative costs) under an applicable program.

20 U.S.C. § 1234d(a).

-4-

Thus, the Department may withhold further payments to a recipient when the Department believes that the recipient of funds under an applicable program is failing to comply substantially with any requirement of law applicable to those funds. Both the heading to 20 U.S.C. § 1234c ("Remedies for existing violations"), and the language "recipient . . . is failing to comply" indicate that the withholding remedy applies only to existing violations. Accordingly, for the Assistant Secretary to have authority to bring the current withholding action, Pennsylvania must be "failing to comply" with a requirement of law applicable to its 1992 Part B grant award funds.

Pennsylvania argues that the audit in this matter is based on a past violation, and therefore, that it is not failing to comply with a requirement of law applicable to its 1992 Part B grant award. This tribunal must disagree. The allegedly incorrect count of children with disabilities who were receiving special education and related services occurred on December 1, 1990, but it is the basis for Pennsylvania's current receipt of funds under its 1992 Part B grant award. Pennsylvania is currently holding a grant award, and but for this withholding action, is currently obligating $3,555,826 of federal funds that the State is not entitled to, if the Department's assertions concerning the count of children are true. Thus, the current receipt and expenditure of federal funds by Pennsylvania through a grant award that is based upon an allegedly incorrect count of children that occurred in the past constitutes a present, ongoing failure to comply with a requirement of law applicable to its 1992 Part B grant award. Moreover, the State wants to spend, in the future, $3,555,826 of federal funds that it is not entitled to. Accordingly, the present withholding action is based upon an allegedly existing and ongoing violation of law.

Pennsylvania states at page 5 of its brief that "The purpose of withholding is to allow a recipient to remedy a current violation and restart the flow of funds." The statute at issue, 20 U.S.C. § 1234d, lends no support to this view. However, Pennsylvania argues that the current statute evolved from § 453 of the General Educational Provisions Act (GEPA), and the State quotes § 453 of GEPA as it existed in 1978. That statute authorized the Commissioner (of Education) to withhold payments "until he is satisfied that the recipient no longer fails to comply with such assurances or other terms."

Congress has deleted this language from the statute, indicating that the Secretary is not limited to pursuing withholding actions only in situations where the recipient has the ability to remedy the alleged violation. Both the plain language of the current statute, 20 U.S.C. § 1234d, and the

-5-

legislative history support this view.1/

Pennsylvania also asks, at page 5 of its brief, "If funds are to properly be withheld under 20 U.S.C. § 1234d until the time that the recipient is deemed to be in compliance, when would the current alleged violation be remedied? What could Pennsylvania possibly do now to modify its child count from December 1990?" The validity of the withholding action is not dependent upon the ability of the State to bring itself into compliance. As stated above, 20 U.S.C. § 1234d, properly cited by Pennsylvania, says nothing about a recipient coming into compliance. The statute does not premise a withholding action on the ability of the recipient to remedy the alleged violation. The statute describes the notice requirements and the hearing in a withholding action, but nowhere does it limit a withholding action only to situations where the recipient has the ability to come into compliance.

In any event, even if the statute did state that a withholding action was limited to situations where the recipient had the ability to come into compliance, Pennsylvania could come into compliance by arranging for the receipt of its 1992 Part B grant award in the amount that the State should receive based upon a proper count of children. The solution, therefore, depends upon what is the actual proper count of children.

Pennsylvania also contends that the appendix to 34 C.F.R. § 81.22 indicates that the Department should pursue a recovery of funds proceeding here rather than a withholding action. That regulation, entitled "Proportionality" states in part:

(a)(1) A recipient that made an unallowable expenditure or otherwise failed to account properly for funds shall return an amount that is proportional to the extent of the harm its violation caused to an identifiable Federal interest associated with the program under which it received the grant or cooperative agreement.

34 C.F.R. § 81.22(a)(1). The regulation goes on to define an identifiable federal interest. Then, in part (b), the regulation discusses the examples of proportionality in the appendix, stating:

---

1/The tribunal also notes that the cases cited by Pennsylvania in footnote 1 of its brief are not based upon the present or former versions of the statute at issue in this proceeding, but are based instead upon other completely unrelated statutes. They are therefore irrelevant to the interpretation of withholding actions as authorized by 20 U.S.C. §§ 1234c and 1234d.

-6-

      (b) The appendix to this part contains examples that illustrate how the standards for proportionality apply.  <u>The examples present hypothetical cases and do not represent interpretations of any actual program statute or regulation.</u>

34 C.F.R. § 81.22(b) (emphasis added).

      Therefore, by its own terms, 34 C.F.R. § 81.22 limits the examples of the proportionality standards in the appendix to just that: the proportionality standards.  These examples cannot be used as interpretations of any actual program statute or regulation, certainly not as examples to contrast the withholding statutes from the recovery of funds statutes.

      Even if the tribunal was to make the comparison that Pennsylvania suggests, the example cited by the State, example (1), is unpersuasive.  Example (1) states:

      (1) <u>Ineligible beneficiaries</u>.  A State uses 15 percent of its grant to meet the special educational needs of children who were migratory, but who have not migrated for more than five years as a Federal program statute requires for eligibility to participate in the program.  Result: Recovery of 15 percent of the grant--all program funds spent for the benefit of those children.  Although the services were authorized, the children were not eligible to receive them.

34 C.F.R. Part 81 Appendix.  Pennsylvania asserts that this example is analogous to the current situation and is authority for the proposition that when a State receives an over-allocation based on a student count that includes ineligible beneficiaries, a recovery of funds proceeding is the only action allowed according to the Department's own regulations.  <u>See</u> Applicant's Brief at 7.

      As stated <u>supra</u>, 34 C.F.R. § 81.22 by its own terms prohibits the example from being used as an interpretation of any actual program statute or regulation.  In any case, the example does not mandate a recovery of funds proceeding here.  First, the example authorizes recovery in the situation described, but it does not prohibit a withholding action.  Second, the example involves the expenditure of program funds on ineligible beneficiaries, not the over-allocation of program funds to a grantee.  Finally, and most importantly, the example is very different from the situation in the present proceeding in one crucial respect:  In the example, the State had already spent its grant money ("Recovery of 15 percent of the grant--<u>all program funds spent</u> for the benefit of those children"), whereas here, Pennsylvania has not yet spent the grant money at issue in this withholding action.  Therefore, example (1) is of no help to Pennsylvania.

-7-

Pennsylvania's reliance on the Supreme Court's decision in Bell v. New Jersey, 461 U.S. 773 (1983), is similarly misplaced. Pennsylvania cites Bell at 775 for the proposition that "the proper remedy available to the Federal Government for a violation based on an underlying audit is a recovery of funds." Applicant's Brief at 7.

In Bell, the Court stated:

In this case we consider both the rights of the Federal Government when a State misuses funds advanced as part of a federal grant-in-aid program under Title I of the Elementary and Secondary Education Act and the manner in which the Government may assert those rights. We hold that the Federal Government may recover misused funds, that the Department of Education may determine administratively the amount of the debt, and that the State may seek judicial review of the agency's determination.

Bell at 775 (emphasis added).

In its summary of the factual and procedural background, the Court stated, "The respondents, New Jersey and Pennsylvania, received grants from the Federal Government . . . [F]ederal auditors determined that each State had misapplied funds." Bell at 775-777 (emphasis added). Thus the Court in Bell held that the Federal Government may recover misused funds advanced as part of a federal grant program. This language says nothing about what the Federal Government's proper remedy is when a State has not yet received or spent those funds. By definition, the Department cannot "recover misused funds" when it has not yet paid those funds to the State and the State has not yet received or spent those funds. The Department cannot "recover" funds from itself.

Pennsylvania also argues that "the Court in Bell noted that a withholding of funds from a State or local educational agency was available when an ongoing violation is discovered. A repayment of misspent funds is the appropriate remedy following an audit determination. [citing Bell at 785 (citing 124 Cong. Rec. 20612 (1978))]" In Bell, the Court quoted Representative Corrada's statement during the discussion of the 1978 Amendments to the Elementary and Secondary Education Act (ESEA). The Supreme Court quoted Representative Corrada as stating:

"[T]itle I, ESEA . . . and [the] regulations currently provide for two main enforcement mechanisms at the Federal level: First, the withholding of title I funds from a State or local educational agency when a violation is discovered; and second, the repayment of misspent funds after an audit . . . ."

-8-

<u>Bell</u> at 785 (emphasis added).<u>2</u>/

Both Pennsylvania in its brief and the Supreme Court in <u>Bell</u> acknowledge that the Federal Government can pursue a withholding action or can require the "repayment of misspent funds" after an audit. The language "repayment of misspent funds" appears to limit a recovery of funds proceeding to those situations where the recipient has already spent the funds.<u>3</u>/ As explained above, here Pennsylvania has not received the $3,555,826 at issue. Thus the Department cannot require the "repayment of misspent funds" when it has not yet spent those funds. Accordingly, the Department's only other possible remedy is to withhold those funds before the State spends them.

Pennsylvania also quotes the Supreme Court's statements in <u>Bell</u> concerning the Secretary's right to recovery of funds under GEPA for overpayments. Applicant's Brief at 8. Specifically, the <u>Bell</u> Court stated:

> Auditing the required records would reveal whether or not the Secretary had overpaid a recipient, and the Senate Committee clearly thought that <u>overpayments would lead to a recovery</u> . . . .

<u>Bell</u> at 784 n.11. (emphasis added). The Court further stated that "the provision that supports the Secretary's right to recover funds [citation omitted] refers to adjustments to be made for overpayments . . . ." <u>Bell</u> at 791.

---

<u>2</u>/Pennsylvania's brief asserts that the Supreme Court said a withholding of funds was available when an <u>ongoing</u> violation is discovered, whereas the language actually quoted by the Court said that a withholding of funds was available when a <u>violation</u> is discovered. Compare Applicant's Brief at 7-8 with <u>Bell</u> at 785. The language employed by the Court allows a "withholding of title I funds from a State or local educational agency when a violation is discovered . . . ." This would seem to authorize withholding actions even when the violation occurred in the past. The distinction is immaterial, nonetheless, because of this tribunal's holding, <u>supra</u>, that 20 U.S.C. §§ 1234c and 1234d limit withholding actions to situations where the recipient is committing a present violation, and the tribunal's holding that Pennsylvania's current receipt of federal funds based upon an erroneous count of children in 1990 would constitute an ongoing violation, assuming for the sake of this motion that Pennsylvania did in fact make an error as to that child count.

<u>3</u>/Note the Court's use of the words "misspent funds" (461 U.S. at 785) and "misused funds" (461 U.S. at 775) when describing the Department's right to obtain "repayment" (461 U.S. at 785) or to "recover" funds (461 U.S. at 775).

-9-

Neither party to this proceeding disputes the Secretary's right under GEPA to obtain a recovery of funds for overpayments. Again, it bears repeating that no overpayment has occurred here, because Pennsylvania has not yet received or spent the $3,555,826 at issue in this proceeding. Therefore, a recovery of funds proceeding is not available to the Department at this time, leaving a withholding action as the only remedy currently available to the Department.4/

Finally, Pennsylvania argues that a balancing of the prejudices mandates that the withholding action should be dismissed and the Department required to pursue a recovery of funds proceeding.5/ The State claims that "[t]here will be no

---

4/See Bell v. New Jersey, 461 U.S. 773 (1983), and analysis supra. See also 20 U.S.C. § 1234a(a)(1), which states:

(1) Whenever the Secretary determines that a recipient of a grant or cooperative agreement under an applicable program must return funds because the recipient has made an expenditure of funds that is not allowable under that grant or cooperative agreement, or has otherwise failed to discharge its obligation to account properly for funds under the grant or cooperative agreement, the Secretary shall give the recipient written notice of a preliminary departmental decision . . . .

20 U.S.C. § 1234a(a)(1) (emphasis added).

See also 34 C.F.R. § 81.20(a), which states:

(a) Subject to the provisions of § 81.21, an authorized Departmental official requires a recipient to return funds to the Department if--
(1) The recipient made an unallowable expenditure of funds under a grant or cooperative agreement; or
(2) The recipient otherwise failed to discharge its obligation to account properly for funds under a grant or cooperative agreement.

34 C.F.R. § 81.20(a) (emphasis added).

Here, Pennsylvania has not yet received or spent the funds at issue and consequently has not failed to account for them properly, so a recovery of funds proceeding would not be authorized at this time.

5/The tribunal expresses no opinion as to whether, if there was an unequal balance of prejudices against Pennsylvania, the Assistant Secretary would be precluded from exercising his

(continued...)

-10-

prejudice to the Department of Education if it is obligated to pursue its claim through a recovery of funds proceeding rather than through a withholding action." Given the analysis of the relevant statutes and case law above, the inaccuracy of this argument becomes apparent. If the Department is not allowed to pursue a withholding action, it may be left with no remedy at all, because as discussed above, it cannot pursue a recovery of funds proceeding until the State has actually spent the funds in issue. A recovery of funds is impossible where the funds have not yet been received and thus cannot be "recovered".

Moreover, if the Department is not allowed to pursue a withholding action and is forced to pursue a recovery of funds proceeding after Pennsylvania has received and spent the $3,555,826 in question, the Department would not be certain of recovery of the funds. By pursuing a withholding action, the Department can prevent an allegedly unauthorized expenditure in the first place. This protects not only the Department's interests, but also Pennsylvania's interests as well.

Despite the State's claim to the contrary, Pennsylvania would not suffer immediate and irretrievable prejudice if the Department is allowed to pursue the present withholding action. The State suffers no prejudice by not receiving money that it was not entitled to receive in the first place, assuming the child count was in error. If anything, Pennsylvania would be prejudiced more by being allowed to receive and spend this money now and then having to return the money to the Department after a recovery of funds action; the State would no longer have these funds and would have to obtain them from another source. This scenario potentially could be more disruptive than the current unavailability of these funds as a result of the present withholding action, especially if the Department's allegations are true (since, even with the $3,555,826 currently unavailable, Pennsylvania should be left with the correct amount of federal funds to serve the number of children with disabilities in its program). If the Department's allegations are incorrect, and Pennsylvania ultimately wins the withholding action on the merits, then it will receive the funds to which it is lawfully entitled. Through this withholding action, the Assistant Secretary has assured that these funds will be available if the State wins the withholding appeal.6/

Finally, the interest of other States, which would be

_____

5/ (...continued)
authority under GEPA to withhold and suspend the fiscal year 1992 Part B funds.

6/ See September 30, 1992 letter from Robert R. Davila to Donald M. Carroll, Jr.

-11-

entitled to more federal funds if the money that Pennsylvania
allegedly is not entitled to was then properly distributed to the
other States, weighs in favor of allowing the Assistant Secretary
to pursue the withholding action here.7/

_____

     7/As the Assistant Secretary notes in his Brief:

        Under GEPA, funds are available for allocation by the
Department to the States until the end of the fiscal year
for which they were appropriated.  20 U.S.C. § 1226.  Thus,
if the Assistant Secretary waited until Pennsylvania had
expended the $3,555,826 of Part B funds at issue in this
case, fiscal year 1992 would have ended and with it the
possibility of reallocating these funds to the States that
are, if the Assistant Secretary is correct, entitled to
them.  See September 17, 1992 letter from Robert R. Davila
to Donald M. Carroll, Jr., at 10, and September 30, 1992
letter from Robert R. Davila to Donald M. Carroll, Jr., at
2.

Assistant Secretary's Brief at 12-13.

     In addition, the September 30, 1992 letter from Robert R.
Davila to Donald M. Carroll, Jr. stated:

        The Part B statute establishes a specific formula for the
allocation of funds to the States.  20 U.S.C. § 1411(a).
That formula is based on the number of children with
disabilities receiving special education and related
services "on December 1 of the fiscal year preceding the
fiscal year for which the determination is made."  20 U.S.C.
§ 1411(a)(3).  Thus, PDOE's fiscal year 1992 Part B grant
award is based on its December 1, 1990 child count.  If, as
I have concluded, PDOE improperly included 8,919 children in
that count, then, not only did the Commonwealth receive Part
B funds to which it was not entitled, but all the other
States were deprived of Part B funds to which they were
entitled.  The only means available to rectify this problem
is to withhold the funds from PDOE and reallocate them to
other States.  The withholding determination does not take
effect until PDOE has fully exercised its right to a
hearing.  The authority to reallocate those funds, however,
lapses at the end of fiscal year 1992, September 30, 1992.
20 U.S.C. § 1226.  As a consequence, assuming that my
withholding determination is ultimately sustained, the only
way I can preserve the option of reallocating the Part B
funds wrongly awarded to PDOE is to establish, before the
end of fiscal year 1992, a contingent obligation of those
funds to the eligible States.  In order to do that, PDOE's
authority to attribute obligations to those $3,555,826 of

                         (continued...)

-12-

## IV.  CONCLUSIONS OF LAW

A.  The Assistant Secretary can properly bring the present proceeding as a withholding action.  Accordingly, the present proceeding should not be dismissed.

B.  The Assistant Secretary's September 17, 1992 notice does attempt to remedy an existing and present violation of a Federal program requirement.

## V.  ORDER

Based on the foregoing findings and conclusions, Pennsylvania's request that this matter be dismissed for lack of jurisdiction on the issue of withholding, is hereby DENIED.

The proceeding shall continue in mediation.


*John F. Cook/PAH*
_____
John F. Cook
Chief Administrative Law Judge


Issued:  March 31, 1993
         Washington, D.C.

_____

    7/ (...continued)
Part B funds must be suspended pending the outcome of the withholding hearing.  A contingent obligation, in the absence of such a suspension, would be pointless since there would be nothing to prevent PDOE from attributing obligations to the $3,555,826 of Part B funds while the hearing is pending.  Thus, a suspension of the $3,555,826 of fiscal year 1992 Part B funds is indispensible to the Department being able to ensure that the States which are entitled to those funds actually receive them.

September 30, 1992 letter from Robert R. Davila to Donald M. Carroll, Jr. at 6-7.

-13-

---

SERVICE

---

A copy of the attached document was sent to the following:

Jeffrey F. Champagne, Esq.          Ronald B. Petracca, Esq.
Chief Counsel                       Office of the General Counsel
Commonwealth of Pennsylvania        U.S. Department of Education
333 Market Street                   400 Maryland Avenue, S.W.
Harrisburg, PA 17126-0333           FOB-6, Room 4083
                                    Washington, D.C. 20202-2110